576 S.E.2d 191

**Patricia B. GATTIS, Claimant, Respondent/Appellant,**

**v.**

**MURRELLS INLET VFW # 10420, Employer, and National Union Fire Insurance Company, Carrier, Appellants/Respondents.**

**No. 3592.**

Court of Appeals of South Carolina.

Heard June 6, 2002.

Decided Jan. 21, 2003.

Rehearing Denied Feb. 20, 2003.

(1974) (holding that offensive language and spitting is a breach of the peace).

102

Duke K. McCall, Jr. and Mark M. Trapp, both of Greenville, for appellants/respondents.

Everett Hope Garner, of Columbia for respondent/appellant.

CURETON, J.:

In this workers' compensation action, the full commission awarded Patricia Gattis ("Claimant") temporary total disability payments (TTD) and ordered her employer, Murrells Inlet VFW # 10420, to pay for medical treatment rendered by out-of-state medical providers. The circuit court affirmed the disability award and reversed the award of medical payments. Claimant appeals the circuit court's reversal of the award of medical payments. Murrells Inlet VFW # 10420 and National Union Fire Insurance Company (collectively "Employer") also appeal. We affirm in part and reverse in part.

## FACTS

Claimant suffered an admitted back injury on March 17, 1995, while performing her duties as a bartender. Employer paid workers' compensation benefits after the accident.

Claimant visited various doctors between 1995 and 1997 in South Carolina and North Carolina and was referred to Duke University Medical Center in North Carolina, Coastal Orthopaedics in South Carolina, and Emory University Spine Center in Georgia. In August of 1997, Dr. William Horton at the Emory Spine Center independently evaluated Claimant. Employer denied Claimant's request for authorization to receive treatment from Dr. Horton.

Claimant filed a Form 50 on November 6, 1997, seeking additional treatments from Dr. Horton. Employer admitted the accident, denied Claimant was entitled to medical payments for Dr. Horton's treatments, and argued Claimant had reached maximum medical improvement ("MMI"). After an August 19, 1998 hearing, the single commissioner found Claimant had not reached MMI and ordered Employer to pay for medical treatment provided by Dr. Horton. Employer appealed. The full commission found Claimant reached MMI on March 9, 1998, upon her release by her treating physician, Dr. Wilkins. At the hearing before the full commission, Claimant sought to introduce a letter from Dr. Horton, which was not included in the record before the single commissioner. The commission refused to admit the letter, noting instead that the letter would provide Claimant with "the opportunity for a change of condition" request.

The commission found a 25% permanent impairment to Claimant's back. As explained by the circuit court: "The [commission] also found that the treatment rendered by Dr. Horton as indicated in the record at that time and considered by the Single Commissioner did not arise out of the accident, and also found that [Employer] was not responsible for such treatment. There was no appeal from this order."

On January 28, 1999, Claimant filed a Form 50 for a change in condition "as evidenced by attached medical documentation and additional medical documentation which may be submitted." As medical documentation, Claimant relied on patient notes and two letters from Dr. Horton, and patient notes and a letter from Dr. John Glaser, another treating physician. Dr. Horton's notes, dated June 12, 1997, stated that Claimant "might well be a candidate for endoscopic fusion." Dr. Horton reiterated in a letter to Claimant dated January 30, 1998: "I

would tell you that surgery remains a possibility although I cannot yet definitely recommend it." In the second letter to Claimant's attorney, dated August 18, 1998, Dr. Horton wrote: "Assuming L5–S1 is the source of her pain, a successful fusion at L5–S1 would very likely decrease the tenure and/or severity of [Claimant's] pain and impairment." Dr. Glaser's patient notes and letter dated October 14, 1998, corroborated Dr. Horton's recommendation for surgery. In his notes, Dr. Glaser wrote: "I basically agree with what Dr. Horton had to say. I think surgery is an option for her."

On February 2, 1999, Employer filed a Form 51 denying a change of condition. The single commissioner found Claimant had experienced a change in condition effective August 18, 1998, the date of Dr. Horton's second letter and reinstated Claimant's TTD. The commissioner further found Employer should be responsible for Claimant's previous evaluations and treatment, and for further evaluation, diagnostic testing, treatment and surgery by Dr. William Horton or his designees as "it has been shown that such treatment may tend to lessen the tenure and severity of Claimant's disability pursuant to 42–17–90."

By order filed January 11, 2000, the full commission affirmed the single commissioner. Employer appealed to the circuit court. While the matter was pending before the circuit court, Claimant filed a motion to compel reinstatement of TTD. By order dated June 12, 2000, the Honorable Howard P. King, circuit court judge, affirmed the finding of a change in condition but reversed the award of medical payments for out-of-state providers concluding "the Commission lacks the authority to order additional treatment outside the state." Judge King thus ordered further proceedings by the full commission regarding Claimant's treatment. Employer and Claimant appealed to this court.

By order filed November 1, 2000, the Honorable John L. Breeden, Jr. acted on the pending motion to compel past-due medical payments. Judge Breeden ordered Employer to pay accrued installment payments for TTD from August 18, 1998, and imposed a penalty. Employer appealed this order.

### Employer's Issues

1. Is Judge King's order finding a change in condition, reinstating Claimant's TTD, and requiring Employer to cover future medical care and treatment, supported by substantial evidence? [1]

2. Did the commission exceed its authority in ordering Employer to pay for Claimant's medical bills under S.C.Code Ann. § 42–17–90?

3. Did Judge Breeden have jurisdiction to rule on Claimant's motion to compel payment of past due workers' compensation benefits?

### Claimant's Issue

1. Did Judge King err in concluding any medical treatment to which Claimant is entitled should be performed only in South Carolina by a physician chosen by Employer?

## STANDARD OF REVIEW

 The determination of whether a claimant experiences a change of condition is a question for the fact finder. *Krell v. S.C. State Hwy. Dept.*, 237 S.C. 584, 588, 118 S.E.2d 322, 323–24 (1961). In *Krell,* our supreme court stated:

> It is not the province of this Court to determine whether the greater weight of the evidence supported the finding that a change had taken place in the condition of the claimant such as would warrant an extension or enlargement of the award, or whether the greater weight of the evidence supported the finding that such change resulted from the injury.... Such facts must be determined by those whose duty it is to find the facts.

237 S.C. at 588, 118 S.E.2d at 323–24 (quoting *Cromer v. Newberry Cotton Mills,* 201 S.C. 349, 371, 23 S.E.2d 19, 28 (1942)). The Administrative Procedures Act establishes the substantial evidence standard of review for factual findings made by the commission. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 133, 276 S.E.2d 304, 305 (1981). Under the substantial evidence standard of review, this court may reverse the commis-

---

1. Employer's issues 1, 3, and 4.

sion's findings only when they are unsupported by substantial evidence. S.C.Code Ann. § 1–23–380(A)(6)(e) (Supp.2001). *See Brayboy v. Clark Heating Co.*, 306 S.C. 56, 58, 409 S.E.2d 767, 768 (1991) (citing the substantial evidence standard of review in an action for change of condition).

" 'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." *Lark*, 276 S.C. at 135, 276 S.E.2d at 306. The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Commn.*, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984).

## DISCUSSION

### EMPLOYER'S APPEAL

**1. Change of condition**

Initially, Employer argues Judge King improperly considered Claimant's Form 50 regarding a change of condition rather than requiring Claimant to have appealed the commission's order of December 30, 1998, which found MMI effective March 9, 1998. Employer further argues the commission erred, in any event, by finding a change of condition entitling Claimant to further medical treatment and additional TTD payments.

In the change of condition action, the full commission found Claimant experienced a change of condition effective August 18, 1998, the date of the final letter from Dr. Horton in which he noted that additional surgery "would very likely decrease the tenure and/or severity of [Claimant's] pain and impairment." Employer argues Dr. Horton's letter "was presented at the first hearing .... [and] was explicitly rejected." Thus, the condition now asserted by Claimant existed when the commission entered its December 30, 1998 order.

Generally, an appeal of a workers' compensation order is concerned with the conditions prior to and at the time of the original award of the commission. Review for a change of condition is concerned with conditions that have arisen thereafter. *Causby v. Rock Hill Printing & Finishing Co.*, 249 S.C. 225, 228, 153 S.E.2d 697, 698–99 (1967). If the parties to the dispute fail to timely appeal the final award of the full commission, then its order "is conclusive and binding as to all questions of fact." S.C.Code Ann. § 42–17–60 (Supp. 2001). Review as a change of condition is not available as an alternative to, or substitute for, an appeal. *Causby*, 249 S.C. at 227, 153 S.E.2d at 698–99. However, where a claimant shows a change of condition, "the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded . . . ." S.C.Code Ann. § 42–17–90 (1985).

At the initial hearing on December 16, 1998, the commission limited its determination to the facts considered by the commissioner, despite Claimant's attempt to supplement the record with Dr. Horton's August 18, 1998 letter. The commission's chairman, in excluding Dr. Horton's letter, opined that the letter was more appropriate in an action for a change of condition. Because the commission limited its order to a determination of Claimant's condition prior to August of 1998, subsequent events, including Dr. Horton's changed diagnosis in August of 1998, were appropriate for consideration in an action alleging a change of condition.

A change in condition occurs when the claimant experiences a change in physical condition as a result of her original injury, occurring after the first award. *Causby*, 249 S.C. at 227, 153 S.E.2d at 698. To justify a modification of an award based on a change of condition, the claimant must show the change in condition and its causal connection to the original compensable accident. *Krell*, 237 S.C. at 588, 118 S.E.2d at 323. "[T]he issue before the Commission is sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based." *Id.* at 588–89, 118 S.E.2d at 324. In *Estridge v. Joslyn Clark Controls, Inc.*, this court explained:

Our supreme court has recognized the purpose of ... [permitting an action for a change of condition] is to allow the commission to terminate compensation in cases where the change in condition amounts to a complete recovery; to increase compensation where the facts of the case reveal that the change in condition is for the worse; and to allow it to diminish compensation where the change in condition is for the better.

325 S.C. 532, 537, 482 S.E.2d 577, 580 (Ct.App.1997).

The commission found Claimant experienced a change in condition based in part upon the continued evaluations by Dr. Horton. Dr. Horton reviewed Claimant's updated diagnostic tests including a discogram, bone scan, and MRI, and opined that a surgical procedure would likely improve Claimant's pain level and function and very likely "decrease the tenure and/or severity of [her] pain and impairment." [2] Both Dr. Horton and Dr. Glaser recommended Claimant undergo further evaluation and back surgery. Dr. Horton further concluded that "a successful fusion at L5–S1 would very likely decrease the tenure and/or severity of [Claimant's] pain and impairment."

We find substantial evidence supports the commission's determination that Claimant experienced a change of condition entitling her to further treatment. *See Dodge v. Bruccoli, Clark, Layman, Inc.*, 334 S.C. 574, 583, 514 S.E.2d 593, 596–97 (Ct.App.1999) (Although a claimant has reached MMI, if additional medical care or treatment would tend to lessen the period of disability, the full commission may be warranted in requiring such treatment.).

### 2. Section 42–17–90

■■■ Employer next argues the commission exceeded its authority in ordering Employer to pay for Claimant's medical bills under S.C.Code Ann. § 42–17–90. We disagree.

Section 42–17–90 permits the commission to review an application for benefits based on a change of condition and "make an award ending, diminishing or increasing the *compensation* previously awarded...." S.C.Code Ann. § 42–17–90

2. Claimant also visited Dr. Horton on December 11, 1998, visited Dr. Steven Poletti of the Carolina Spine Institute in Charleston, South Carolina, on June 16, 1999, and had another MRI on June 30, 1999.

(1985) (emphasis added). Employer argues the commission is limited to a compensatory award and does not have the authority to order the payment of medical bills.

In *Davis v. South Carolina Department of Corrections*, our supreme court rejected a similar argument. 289 S.C. 123, 125, 345 S.E.2d 245, 246 (1986). Inmate Davis worked as a kitchen helper while serving his youthful offender sentence. He injured his back and sought workers' compensation benefits. The single commissioner and full commission concluded the injury was compensable and awarded Davis temporary total benefits and medical benefits. The circuit court reversed. Pursuant to S.C.Code Ann. § 42–1–480 (1976), our supreme court reinstated the full commission's award. *Id.*

Section 42–1–480 provides:

> Any inmate of the State Department of Corrections, . . . in the performance of his work in connection with the maintenance of the institution, . . . who suffers an injury for which compensation is specifically prescribed in this Title, may, upon being released from such institution[,] . . . be awarded and paid *compensation* under the provisions of this Title.

S.C.Code Ann. § 42–1–480 (1985) (emphasis added). The circuit court in *Davis* held the term "compensation" under section 42–1–480 excluded medical payments. *Davis*, 289 S.C. at 124–25, 345 S.E.2d at 246. The supreme court disagreed stating:

> The Worker's Compensation Act should be liberally construed in furtherance of the purposes for which it was designed. Any reasonable doubts as to construction should be resolved in favor of the claimant by including him within the coverage of the Act rather than excluding him. It would require a strained construction of the Act to allow a former inmate compensation for permanent disability, yet deny him the medical treatment which may prevent his injury from resulting in permanent disability.

*Id.* at 125, 345 S.E.2d at 246 (citation omitted).

We likewise hold that the term "compensation" does not preclude the commission from awarding medical benefits to a claimant under section 42–17–90.

### 3. Motion to Compel

Employer finally argues Judge Breeden lacked jurisdiction to hear and issue an order on Claimant's motion to compel past-due total temporary disability payments for two reasons. First, Claimant failed to file a Rule 59(e) motion to preserve the issue after Judge King's order was filed. Second, once the final order was appealed to this court, the circuit court lost jurisdiction of the case. We disagree.

Claimant based her motion to compel payment of past-due TTD on the full commission's January 2000 order, which found a change in condition effective August 18, 1998. Though the initial circuit court hearing was identified as "[Claimant's] motion to compel the payment of benefits," the parties principally argued the merits. Because Claimant's right to receive arrearages was not resolved with finality until the order of June 12, 2000, it would have been premature to move to compel until then. The motion to compel payments is a separate issue from the propriety of awarding them in the first place.

Circuit courts generally lose subject matter jurisdiction of a case when a notice of appeal is filed and served. However, our appellate court rules provide that "[n]othing . . . shall prohibit the lower court . . . from proceeding with matters *not affected by the appeal.*" Rule 205, SCACR (emphasis added). "Although service of notice of an intent to appeal divests the lower court of jurisdiction over the order appealed, the lower court retains jurisdiction over matters not affected by the appeal." *Jackson v. Speed,* 326 S.C. 289, 311, 486 S.E.2d 750, 761 (1997) (After defendants' timely appeal of the jury's verdict, the trial judge had jurisdiction to determine attorney's fee award to plaintiffs where plaintiffs had requested attorney's fees prior to the appeal and defendants failed to appeal the propriety of awarding attorney's fees pursuant to the statute.).

Accordingly, we conclude Judge Breeden had jurisdiction to rule on Claimant's motion to compel payments, which need not be presented first to the full commission. *See McLeod v. Piggly Wiggly Carolina Co.,* 280 S.C. 466, 472, 313 S.E.2d 38, 41 (Ct.App.1984) (circuit court had jurisdiction over motion to compel disability payments).

## CLAIMANT'S APPEAL

### 1. Out-of-State Medical Providers

 Claimant argues Judge King erred in concluding that any medical treatments she receives must be performed in South Carolina. Employer argues the statutory and regulatory schemes require a claimant to accept the medical provider chosen by the employer.

Regulation 67–509 states that while a claimant is receiving temporary compensation benefits, "[t]he employer's representative chooses an authorized health care provider and pays for authorized treatment." S.C.Code Ann. Reg. 67–509(A) (1990). However, section 42–15–60 of the Worker's Compensation Act provides, in part:

> Medical ... treatment ... shall be provided by the employer. *In case of a controversy arising between employer and employee, the Commission may order such further medical, surgical, hospital or other treatment as may in the discretion of the Commission be necessary.* ... [T]he employer may, at his own option, continue to furnish or cause to be furnished, free of charge to the employee, and the employee shall accept an attending physician, *unless otherwise ordered by the Commission.* ... The refusal of an employee to accept any medical, hospital, surgical or other treatment when provided by the employer or ordered by the Commission shall bar such employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension *unless in the opinion of the Commission the circumstances justified the refusal, in which case the Commission may order a change in the medical or hospital service.*

S.C.Code Ann. § 42–15–60 (1985) (emphasis added).

"[T]he cardinal rule of statutory construction is that the court must ascertain and effectuate the intent of the legislature, and in interpreting a statute, the court must give the words their plain and ordinary meaning without resorting to a tortured construction which limits or expands the statute's operation." *State v. Dickinson,* 339 S.C. 194, 199, 528 S.E.2d 675, 677 (Ct.App.2000). "Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *TNS Mills,*

*Inc. v. S.C. Dept. of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998).

The full commission is afforded much discretion under Section 42–15–60. Where it deems it necessary, the commission may override an employer's choice of medical provider and may excuse a claimant's "justified" refusal to seek treatment from employer's provider. In these circumstances, "the Commission may order a change in the medical or hospital service" provided the claimant. Section 42–15–60 does not require the commission to limit its choice of medical care to providers in South Carolina. Absent a specific directive by the legislature to the contrary, we decline to read such a requirement into the statute.

## CONCLUSION

For the foregoing reasons, we affirm the portion of the circuit court's order finding substantial evidence in the record supported the full commission's finding of a change of condition. We likewise affirm the award of arrearages and penalties based on Claimant's motion to compel. Finally, we reverse that portion of the order concluding the commission did not have the discretion to order Employer to pay for medical treatment rendered to Claimant by her out-of-state medical providers and reinstate the full commission's award.

**AFFIRMED IN PART and REVERSED IN PART.**

SHULER, J. concurs.

STILWELL, J., dissents in a separate opinion.

STILWELL, J. (dissenting):

I respectfully dissent. I agree with the majority's analysis of and conclusion regarding the motion to compel, but disagree with the decision affirming the finding of a change of condition and reinstating temporary total disability (TTD). I would therefore find it unnecessary to address the issue concerning treatment by out-of-state medical providers.

The initial hearing before the single commissioner was held on August 19, 1998. The resulting order was appealed to the full commission which, among other things, refused to allow

into evidence a letter from Dr. Horton, found Claimant sustained a 25% permanent impairment to her back and had reached maximum medical improvement (MMI) on March 9, 1998 when she was released by her treating physician. No appeal was taken from that order. If the parties to a dispute fail to timely appeal the final award of the commission, then its order "is conclusive and binding as to all questions of fact." S.C.Code Ann. § 42–17–60 (Supp.2001).

We are now asked to affirm an award for a change of condition based on that letter from Dr. Horton which was dated the day before the initial hearing. I have difficulty justifying an award for a change of condition based on a condition which admittedly existed prior to the initial award.

"[A] change in condition means a change in the physical condition of the claimant as a result of the original injury, occurring after the first award." *Cromer v. Newberry Cotton Mills*, 201 S.C. 349, 357, 23 S.E.2d 19, 22 (1942). It "can consist of either a change in the claimant's physical condition that impacts his earning capacity, a change in the claimant's earning capacity even though claimant's physical condition remains unchanged, or a change in the degree of disability even though claimant's physical condition remains unchanged." *Blair v. Am. Tel. & Communications Corp.*, 124 N.C.App. 420, 477 S.E.2d 190, 192 (1996) (citations omitted).[1]

Not having appealed the full commission order finding MMI, Claimant is bound by it,

> subject of course to her right to review of it upon change of condition as prescribed by Section [42–17–90]. But her suggestion here that review under Section [42–17–90] was available to her as an alternative to, or substitute for, an appeal, is without merit. An appeal is concerned with conditions prior to and at the time of the original Opinion and Award, whereas review under Section [42–17–90] is concerned with conditions that have arisen thereafter.

*Causby v. Rock Hill Printing & Finishing Co.*, 249 S.C. 225, 228, 153 S.E.2d 697, 698–699 (1967).

---

1. "The decisions of North Carolina courts interpreting that state's workers' compensation statute are entitled to weight because the South Carolina statute was fashioned after North Carolina's." *Adams v. Texfi Ind.*, 320 S.C. 213, 217, 464 S.E.2d 109, 112 (1995).

"A change of condition refers to conditions different from those in existence when an award was originally made and a continued incapacity of the same kind and character and for the same injury is not a change in condition." *Lewis v. Craven Reg'l Med. Ctr.*, 122 N.C.App. 143, 468 S.E.2d 269, 274 (1996). In *Lewis*, where claimant complained of scar tissue, increased pain, and a continuing condition present during the first award, the court held no change of condition had been proven because "this development and continuing incapacity is 'of the same kind and character and for the same injury' that gave rise to plaintiff's [initial] compensation. . . ." *Id.*

Claimant admitted in testimony before the single commissioner on the change of condition that she had initially requested surgery, which was denied. She testified the pain was slightly worse but that she was essentially claiming the same treatment for the same condition on which the initial award was based. As Claimant's counsel conceded in the initial hearing before the full commission, "the condition is what it is now. It wouldn't constitute a change later." Dr. Horton's August 18, 1998 letter noted that additional surgery "would very likely decrease the tenure and/or severity of Ms. Gattis' pain and impairment." As Employer noted, this "evidence from Dr. Horton was presented at the first hearing . . . [and] was explicitly rejected." There is no evidence a medical change has occurred since the initial hearing, and Claimant produced no evidence about nor did she argue any change in her earning capacity.

I would, therefore, reverse that portion of the order reinstating TTD and authorizing additional and continuing treatment.