678 S.E.2d 825

**Gail MUNGO, Respondent,**

v.

**RENTAL UNIFORM SERVICE OF FLORENCE, INC.,
and Companion Commercial Ins., Appellants.**

No. 4550.

Court of Appeals of South Carolina.

Heard March 3, 2009.
Decided May 27, 2009.
Rehearing Denied June 25, 2009.

Affirmed in part, reversed in part, and remanded.

---

Ellen H. Goodwin, of Columbia, for appellants.

Edward L. Graham, of Florence, for respondent.

WILLIAMS, J.:

Rental Uniform Service of Florence, Inc. and Companion Commercial Insurance (collectively referred to as Employer) appeal from the circuit court's order that found Gail Mungo (Claimant) was entitled to workers' compensation benefits for a change in condition to her spine and for psychological benefits. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

In May 2000, Claimant sustained an admitted compensable injury to her cervical spine while working for Employer. Employer provided Claimant treatment by several physicians, including Dr. Bill Edwards of Pee Dee Orthopaedic Associates. Dr. Edwards performed a two-level cervical discectomy and fusion at discs C4/5 and C5/6 on Claimant in March 2001. Dr. Edwards later released Claimant on May 29, 2001, with a twenty percent impairment rating on her spine. Claimant was reevaluated by Dr. Edwards on May 2, 2003, and he found Claimant had reached maximum medical improvement (MMI) as of that date. Dr. Edwards reiterated Claimant's twenty percent impairment rating and placed Claimant on a twenty pound lifting restriction.

Claimant later sought treatment from Dr. Elizabeth Snoderly, an interventional anesthesiologist specializing in pain management, for ongoing pain. Dr. Snoderly first examined Claimant on June 3, 2003, and the records from this examination were made available on June 6, 2003. In these records, Dr. Snoderly diagnosed Claimant with (1) cervical facet joint syndrome, (2) muscle spasms not seen in earlier doctors' visits, and (3) loss of gross muscle strength.

A hearing was held on the matter before Commissioner Bryan Lyndon on June 10, 2003. At the start of this hearing, Employer objected to the introduction of Dr. Snoderly's report from her June 3, 2003 examination of Claimant, arguing the records were untimely. Commissioner Lyndon sustained this objection because Claimant failed to submit the report to Employer fifteen days prior to the hearing as required by Regulation 67–612 of the South Carolina Code of Regulations. Commissioner Lyndon proceeded with the hearing without any use or consideration of Dr. Snoderly's office notes or records.

After considering the other documents and testimony presented by both parties, Commissioner Lyndon found Claimant reached MMI on May 2, 2003, making her ineligible for any further medical treatment. Claimant was found to have sustained a forty percent partial disability from the original injury. Commissioner Lyndon allowed Employer to discontinue payments to Claimant for temporary total disability bene-

fits and ordered any payments already made after the date of MMI to be applied against Claimant's permanent partial disability award. Employer was additionally ordered to pay for all of Claimant's causally-related and authorized medical treatment through May 2, 2003. Neither party appealed this decision.

On July 23, 2004, Claimant filed a Form 50, Request for Hearing, alleging a change of condition to her cervical spine and development of problems with her neck, right shoulder, right arm, and significant psychological conditions. A hearing was held before Commissioner Alan Bass on March 3, 2005. Commissioner Bass denied Claimant's request for benefits for a change of condition, and he filed his order on October 24, 2005. Significantly, however, Commissioner Bass stated:

> I find that Claimant has not sustained a change of condition from an orthopaedic standpoint. That said, I must say that, if Dr. Snoderly's exam and diagnoses ... could be taken into account, I would have found a [c]hange of [c]ondition because of (1) Cervical facet joint syndrome; (2) Spasm absent in visits prior to hearing [on June 10, 2003]; and (3) Loss of strength from [5 out of 5 strength] to [2 out of 5 strength]. I find, as a matter of law, that because Dr. Snoderly's diagnoses were made prior to the hearing, they cannot be considered for [c]hange of [c]ondition.

Commissioner Bass additionally stated, "The Claimant may not now raise the issue of depression when she could have done so [at the] last hearing."

Claimant filed a Form 30, Request for Commission Review, alleging eighteen errors of law, and the Appellate Panel of the Workers' Compensation Commission (the Appellate Panel) affirmed Commissioner Bass's decision and order in all respects. Thereafter, Claimant appealed the Appellate Panel's decision to the circuit court.

Following a hearing, the circuit court reversed Commissioner Bass's findings Claimant had not proven a change of condition for the worse of her cervical spine and Claimant had not proven entitlement to psychological benefits. The circuit court found Claimant's original award from the June 10, 2003 hearing was based on medical records created on or before May 2, 2003, the date of MMI. Therefore, Commissioner

Bass erred in stating he could not consider records created between May 2, 2003, and June 10, 2003, at the change of condition hearing. The circuit court additionally noted "the reliable, probative and substantial evidence of record proves that any symptoms of depression or other psychological conditions before the first hearing were mild, undiagnosed and untreated; and became full-blown thereafter, meeting formal diagnostic criteria and necessitating formal treatment by [the doctor] only after the first hearing[,]" meaning Claimant could not have raised the issue of depression at the June 10, 2003 hearing. The circuit court, therefore, remanded the case to the single commissioner to determine the precise benefits owed to Claimant for her change of condition and for her psychological condition. This appeal followed.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act (the APA) establishes the standard of judicial review for appeals from the Workers' Compensation Commission (the Commission). *Jones v. Harold Arnold's Sentry Buick, Pontiac*, 376 S.C. 375, 378, 656 S.E.2d 772, 774 (Ct.App.2008). Under the scope of review established in the APA, this Court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but it may reverse where the decision is affected by an error of law. *Hall v. United Rentals, Inc.*, 371 S.C. 69, 79, 636 S.E.2d 876, 882 (Ct.App.2006). This Court's review is, therefore, limited to determining whether the Appellate Panel's decision is unsupported by substantial evidence or controlled by an error of law. *Corbin v. Kohler Co.*, 351 S.C. 613, 617, 571 S.E.2d 92, 95 (Ct.App.2002).

## LAW/ANALYSIS

As a threshold matter, we must determine the appealability of the circuit court's order. This Court has held "that an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable." *Foggie v. Gen. Elec. Co.*, 376 S.C. 384, 388, 656 S.E.2d 395, 398 (Ct.App.2008). However, if the circuit court's order is a final judgment, then it is immediately appealable.

*Id.* at 389, 656 S.E.2d at 398. "Generally, an order is a final judgment on one or more issues if it constitutes an ultimate decision on the merits." *Brown v. Greenwood Mills, Inc.,* 366 S.C. 379, 387, 622 S.E.2d 546, 551 (Ct.App.2005). "An order involves the merits if it finally determines some substantial matter forming the whole or part of some cause of action or defense in the case." *Id.*

In the current case, the circuit court ruled it was error for Commissioner Bass and the Appellate Panel (1) to exclude Dr. Snoderly's records from the change of condition hearing and (2) to not consider Claimant's psychological claims at the change of condition hearing. These rulings led the circuit court to order a reversal of the Appellate Panel's conclusions that Claimant had not proven a change of condition for the worse of her cervical spine involving problems with the neck, right shoulder, and right arm and Claimant had not proven entitlement to psychological benefits. The circuit court remanded the case to the single commissioner for a determination of what precise benefits were due to Claimant for her change of condition of her cervical spine and for her psychological conditions.

The circuit court's order mandates an award for change of condition to the cervical spine and for psychological benefits. This ruling is a decision on the merits because it decides with finality whether Claimant proved these changes in her condition. Although the circuit court remanded the issue of the precise damages to be awarded to Claimant, the single commissioner would have no choice but to award some damages to Claimant. Accordingly, the circuit court's order constitutes a final decision and is appealable. *See id.* at 388, 622 S.E.2d at 551 (finding that because the circuit court's order mandated apportionment, the court left the percentage of apportionment to the Commission on remand, so the Appellate Panel would have no choice but to allocate some part of the claimant's disability to the non-compensable cause, thus the circuit court's order constituted a final decision on the issue of apportionment, making it appealable).

Finding Employer's appeal is properly before us, we now address the merits of Employer's arguments. Employer first argues the circuit court erred in reversing the Appellate

Panel's determination that Claimant did not sustain a change of condition for the worse. We disagree.

"The determination of whether a claimant experiences a change of condition is a question for the fact finder." *Gattis v. Murrells Inlet VFW No. 10420*, 353 S.C. 100, 107, 576 S.E.2d 191, 194 (Ct.App.2003). The Appellate Panel is the ultimate fact finder in workers' compensation cases, and if its findings are supported by substantial evidence, it is not within our province to reverse those findings. *Robbins v. Walgreens & Broadspire Servs., Inc.*, 375 S.C. 259, 264, 652 S.E.2d 90, 93 (Ct.App.2007). "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached." *Id.*

Generally, an appeal of a workers' compensation order is concerned with the conditions prior to and at the time of the original award, while review for a change of condition is concerned with conditions that have arisen thereafter. *Gattis*, 353 S.C. at 109, 576 S.E.2d at 195. Review of an award through a change of condition hearing is not an alternative to or substitute for an appeal, but if a claimant can show a change of condition, the award may be reviewed and either increased, diminished, or terminated by the Appellate Panel. *Id.*

"A change in condition occurs when the claimant experiences a change in physical condition as a result of her original injury, occurring after the first award." *Id.* at 109, 576 S.E.2d at 196. When the original order is limited to a determination of the claimant's condition as of a specific date, it is appropriate for the Appellate Panel to then consider any subsequent events or diagnoses made after that date when making a determination about an alleged change of condition. *See id.* at 109, 576 S.E.2d at 195–96 ("Because the [C]omission limited its order to a determination of Claimant's condition prior to August of 1998, subsequent events, including [the doctor's] changed diagnosis in August of 1998, were appropriate for consideration in an action alleging a change of condition."); *see also Clark v. Aiken County Gov't*, 366 S.C. 102, 110, 620 S.E.2d 99, 103 (Ct.App.2005) (explaining *Gattis* held "because the [Appellate Panel] limited its initial order to a

determination of the claimant's condition prior to the advent of the evidence in question, the evidence was appropriate for the change of condition proceeding"). Review of an award at a change of condition hearing is, therefore, concerned with the date as of which the claimant's condition was determined rather than the date of the actual hearing in which that award was rendered. *See Gattis*, 353 S.C. at 109, 576 S.E.2d at 195–96 (finding it appropriate for the Appellate Panel to consider the doctor's August 18, 1998 letter at the change of condition hearing when it made a determination at the initial hearing based on the facts and circumstances considered by the single commissioner at the August 19, 1998 hearing, which did not include the doctor's August 18 letter).

The original hearing concerning Claimant's injury was held before Commissioner Lyndon on June 10, 2003. One week prior, on June 3, 2003, Dr. Snoderly examined Claimant concerning the continuing pain she was experiencing because of her injury. Dr. Snoderly's records were not available to be offered as exhibits until June 6, 2003, at which time they were promptly turned over to Employer. At the hearing, Employer objected to the admission of the records because they were not timely submitted. Commissioner Lyndon sustained this objection and excluded the records. Commissioner Lyndon did not consider Dr. Snoderly's records at the hearing or when making his final order and, instead, based his findings and conclusions on medical records created on or prior to May 2, 2003, when Dr. Edwards released Claimant as being at MMI.

A change of condition hearing was then held before Commissioner Bass on March 2, 2005. In his order, Commissioner Bass stated:

[I]f Dr. Snoderly's exam and diagnoses . . . could be taken into account, I would have found a [c]hange of [c]ondition because of (1) Cervical facet joint syndrome; (2) Spasm absent in visits prior to hearing; and (3) Loss of strength from 5/5 to 2/5. I find, as a matter of law, that because Dr. Snoderly's diagnoses were made prior to the hearing, they cannot be considered for [c]hange of [c]ondition.

The Appellate Panel fully adopted this finding.

Pursuant to *Gattis*, this conclusion is erroneous. Although Dr. Snoderly's diagnoses were made and recorded

prior to Claimant's initial hearing, her records were excluded as untimely and not considered or factored into Commissioner Lyndon's award. Commissioner Lyndon specifically stated Claimant's award was based on her condition as of May 2, 2003, the date Dr. Edwards found Claimant reached MMI. The appropriate date from which the single commissioner should evaluate a change in Claimant's condition is therefore May 2, 2003, not June 10, 2003, the date of the hearing. Dr. Snoderly's diagnoses were not made prior to May 2, 2003, and therefore, her records should have been considered at the change of condition hearing.

Giving effect to the correction of that legal error, and by the plain language in Commissioner Bass' order, which was fully adopted by the Appellate Panel, the circuit court found that the single commissioner and the Appellate Panel would have found as a fact that Claimant sustained a change of condition. The circuit court then found "[t]he reliable, probative and substantial evidence of record supports that finding." After our review of the record, including Dr. Snoderly's office notes and records, we find substantial evidence supports the Appellate Panel's finding that Claimant sustained a change of condition. We, therefore, affirm the order of the circuit court finding Claimant proved a change of condition for the worse.

Employer next argues the circuit court erred in awarding Claimant benefits for psychological conditions because substantial evidence proves such conditions existed prior to the original hearing and because Claimant failed to present sufficient evidence to support the change of condition claim. We agree in part and remand the issue to the Commission.

Just as physical changes of condition are properly considered when reviewing a claimant's initial award, so too are mental changes of condition. *Estridge v. Joslyn Clark Controls, Inc.*, 325 S.C. 532, 537–38, 482 S.E.2d 577, 580 (Ct.App.1997). If the mental condition is causally connected to the original injury, is a newly manifested symptom of that injury, and has caused a worsening of the claimant's condition, then it is proper for the single commissioner to consider the mental condition at a change of condition hearing. *Id.* at 538, 482 S.E.2d at 580.

A mental condition is causally related to the original injury if the condition was induced by the physical injury. *Id.* The mental condition would be a new symptom manifesting from the same harm to the body, and "[i]n such circumstances, it may properly be compensated in a change of condition proceeding as a part of the original injury." *Id.* at 538–39, 482 S.E.2d at 581. Additionally, "[a] symptom which is present and causally connected, but found not to impact upon the claimant's condition at the time of the original award, may later manifest itself in full bloom and thereby worsen his or her condition[,]" and such an occurrence is one of the reasons the Commission may review awards through change of condition hearings. *Id.* at 540, 482 S.E.2d at 581. Therefore, even if the mental condition was not raised at the original hearing, it may be raised at the change of condition hearing. *Id.*

Claimant did not seek benefits for any mental condition in her original Form 50, and therefore, Claimant's initial award was based solely on her physical injuries. Prior to May 2, 2003, the date used by Commissioner Lyndon to assess Claimant's condition, no physician had diagnosed Claimant with depression or any other psychological condition. In September 2001, Dr. William Stewart, a certified rehabilitation counselor and certified vocational evaluator, evaluated Claimant and noted Claimant's test results indicated "a mild level of depression" and "a minimal level of anxiety." Dr. Stewart, however, did not diagnose Claimant with any psychological condition or provide any treatment following this evaluation.

Not until February 3, 2004, did a physician, Dr. Snoderly, formally recognize Claimant's problems with any psychological condition and refer her to a mental health professional for evaluation and treatment. Dr. Snoderly noted at her initial meeting and examination of Claimant on June 3, 2003, that "[Claimant] does state the pain has definitely affected her ability to sleep, be physically active, and concentrate. It has affected her emotionally and also has affected her social relationships." Dr. Snoderly, however, did not recommend any further evaluation or treatment for Claimant and made no diagnosis of depression at that examination. Additionally, these records were not considered by Commissioner Lyndon when making the initial award.

In Dr. Snoderly's records from Claimant's February 3, 2004 examination, Dr. Snoderly stated:

[Claimant] did confide in me today that she is feeling a little depressed. She has never really had a problem with depression, but after this injury and the continued problems that she has been having, she does have some feelings of depression. She and I did discuss having her referred to Dr. A.J. Rainwater . . . .

Dr. Snoderly later clarified her referral stating, "I became concerned since the [June 10, 2003] hearing about the psychological effects of [Claimant's] chronic pain. I have thus referred her to [Dr. Rainwater], a psychologist in Florence for evaluation, treatment and biofeedback."

Thereafter, Claimant visited Dr. Rainwater on March 3, 2004. Following this evaluation, Dr. Rainwater diagnosed Claimant with (1) depression secondary to chronic pain, (2) mixed pain disorder with conversion dynamics, (3) insomnia secondary to pain, and (4) hypolibido secondary to pain.

On February 4, 2005, Claimant was evaluated by Dr. Robert Brabham, a psychologist. Dr. Brabham found Claimant's pain disorder was worsening instead of improving, her depression was worsening with the continuation of pain and her inability to function, and her anxiety concerning her future financial expenses was considerable. Dr. Brabham then diagnosed Claimant with (1) pain disorder associated with both psychological factors and a generalized medical condition; (2) depressive disorder, secondary to on-the-job injuries; and (3) generalized anxiety disorder, secondary to on-the-job injuries. Dr. Brabham concluded his report by stating that it was "[his] opinion that [Claimant's] conditions have indeed deteriorated since the time of her Worker's Compensation hearing in 2003."

After hearing and reviewing all of this evidence, Commissioner Bass found Claimant could not raise the issue of depression at the change of condition hearing because she failed to raise that issue at the initial hearing. The Appellate Panel affirmed this ruling. The circuit court reversed, finding the holding was controlled by an error of law and the reliable, probative, and substantial evidence of record supported a finding that Claimant was entitled to benefits for her psychological conditions.

 Pursuant to *Estridge*, we find the circuit court was correct to hold the single commissioner and the Appellate Panel committed legal error in ruling they could not consider the issue of depression raised by Claimant at the change of condition hearing. 325 S.C. at 538–39, 482 S.E.2d at 580–81 ("A [mental] condition which is induced by a physical injury, is thereby causally related to that injury[, and] . . . may properly be compensated in a change of condition proceeding as a part of the original injury."). Claimant could raise the issue of depression at the change of condition hearing because the psychological condition was induced by the original physical injury and any symptoms of depression she experienced prior to the June 3, 2003 hearing were mild, undiagnosed, and untreated. *See id.*, 325 S.C. at 540, 482 S.E.2d at 581 ("A symptom which is present and causally connected, but found not to impact upon the claimant's condition at the time of the original award, may later manifest itself in full bloom and thereby worsen his or her condition. Such an occurrence is within the reasons for the code section involving a change of condition."). Further, because Claimant did not raise the issue of depression in her original Form 50 or at the initial hearing and because all records from Dr. Snoderly's June 3, 2003 evaluation, in which she mentioned psychological effects from the physical injury, were excluded from evidence, the doctrine of res judicata does not prevent this issue from being litigated. *See id.* ("The doctrine of res judicata only acts to preclude relitigation of issues actually litigated or which might have been litigated in the first action."). Consequently, the change of condition hearing was the first opportunity a single commissioner could consider Claimant's psychological condition, and it was error for the single commissioner and the Appellate Panel to not consider the issue.

 Although we find the circuit court was correct to rule the issue of depression could have been raised and considered at the change of condition hearing, we find the circuit court exceeded its scope of authority by finding Claimant had proven entitlement to psychological benefits. Both the single commissioner and the Appellate Panel found they could not consider the issue of depression at the change of condition hearing, and therefore, no factual findings were made concerning whether Claimant carried her burden of

proving her psychological condition had worsened since the initial hearing. In workers' compensation cases, this Court, as well as the circuit court, serves only to review the factual findings of the Appellate Panel and to determine whether the substantial evidence of record supports those findings. *See Brown*, 366 S.C. at 392, 622 S.E.2d at 553 ("Pursuant to the APA, this Court's review is limited to deciding whether the Appellate Panel's decision is unsupported by substantial evidence or is controlled by some error of law."). Where the Appellate Panel has made no factual findings, the issue must be remanded. *See Estridge*, 325 S.C. at 540, 482 S.E.2d at 581 (finding the issue of change of psychological condition should be remanded for the workers' compensation commission to determine rather than have this Court make that determination). We therefore reverse the circuit court's holding that Claimant has proven her entitlement to psychological benefits and remand the issue to the Commission.

## CONCLUSION

Based on the foregoing, the circuit court's order is

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

HUFF and KONDUROS, JJ., concur.