**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Paula Russell, Claimant, Appellant,

v.

Wal-Mart Stores, Inc., Employer, and American Home Assurance, Carrier, Respondents.

Appellate Case No. 2019-001380

―――――――――――――

Appeal From The Workers' Compensation Commission

―――――――――――――

Unpublished Opinion No. 2022-UP-422
Heard June 9, 2022 – Filed November 23, 2022

―――――――――――――

**AFFIRMED**

―――――――――――――

C. Daniel Vega and James David George, Jr., both of Chappell Smith & Arden, P.A., of Columbia, for Appellant.

Johnnie W. Baxley, III, of Willson Jones Carter & Baxley, P.A., of Mount Pleasant, for Respondents.

―――――――――――――

**PER CURIAM:** Paula Russell appeals the order of the Appellate Panel of the South Carolina Workers' Compensation Commission (the Commission) finding she failed to prove a change of condition under section 42-17-90 of the South Carolina Code (2015). We affirm.

**FACTS/PROCEDURAL HISTORY**

This case has an extensive procedural history, beginning with Russell's work-related back injury at Wal-Mart in 2009. A single commissioner issued the original order in June 2011, stating Russell had reached maximum medical improvement (MMI) and was entitled to compensation for a seven-percent back impairment disability rating. The single commissioner also found Russell was entitled to ongoing pain medication. That order was not appealed. Russell timely filed a Form 50, requesting the Commission review her award for a change of condition for the worse, and a single commissioner heard the case in 2013. Since 2013, this case has been reviewed by multiple single commissioners and several times by the Commission. Our supreme court and this court have also considered aspects of this case.[1] Finally, in a July 2019 order, the Commission found Russell did not prove a compensable change of condition under section 42-17-90.[2] That order is the subject of this appeal.

In 2013, Russell testified she had experienced new symptoms since reaching MMI, including shaking and pain radiating down into her legs. Russell stated she had pain in her legs before MMI but it was not "the same stiffness or the sharpness."

The record contains a letter from Dr. James Merritt, an orthopedist who treated Russell before referring her to Dr. William Edwards, a spine surgeon. In November 2011, Dr. Merritt stated, "I do feel that since [Russell] is getting increasing pain that the condition has worsened." Russell's medical records from February 2012 show that Dr. Edwards agreed with Dr. Merritt's assessment of the original seven-percent impairment rating of Russell's back. Dr. Edwards wrote, "Though she appears to have worsen[ed] radicular symptoms predominantly on the right side, her MRI scan is unchanged and it is unlikely that the condition has worsened from an objective standpoint." In March 2012, Dr. Merritt wrote:

> [T]here is not much else we can do from [a] nonoperative
> standpoint. She has seen Dr. Edwards who also felt that

---

[1] *See Russell v. Wal-Mart Stores, Inc.*, 426 S.C. 281, 290–91, 826 S.E.2d 863, 863 (2019) (holding the order of the single commissioner was immediately appealable); *Russell v. Wal-Mart Stores, Inc.*, 415 S.C. 395, 401, 782 S.E.2d 753, 756–57 (Ct. App. 2016) (holding the Commission erred in using an objective evidence standard instead of the preponderance of the evidence standard).
[2] The Commission found Russell was entitled to ongoing anti-inflammatory medication.

really not much else can be done and surgery would be a last resort. . . . [A] lot of pain seems to be in her back. At this point . . . she is not quite ready . . . for a surgical procedure.

In July 2012, Dr. Edwards wrote:

[Russell] has had long standing radicular right buttock and leg pain since 2009. . . . All potential risks were discussed with her including my inability to guarantee her complete relief of symptoms especially the mechanical component of her discomfort. She indicated that she would be thankful for even a small measure of improvement in her radicular pain hence surgery is offered.

In his deposition, Dr. Merritt stated Russell's post-MMI MRI showed a slightly worsened condition but acknowledged he did not see the actual films and he would defer to Dr. Edwards, who was "more of an expert on spine MRIs." Dr. Merritt stated Russell had pain in her legs before MMI but when he saw her in September 2011, it was a new kind of anatomical distribution.

In his deposition, Dr. Edwards stated Russell's pre-MMI and post-MMI radiological scans were "substantially the same." Dr. Edwards stated Russell's complaints had increased but her symptoms were "radiographically not worsening." He stated the worsening of her symptoms was "predominantly a subjective or symptomatic worsening," although it could have been a "chronic change in that nerve that [made] it more painful or more symptomatic."

Dr. Edwards believed it was reasonable to offer Russell surgical intervention because she had a chronic problem that had not improved, which she believed to be worsening and Dr. Edwards had "no reason to doubt that." He said Russell would have been a candidate for surgery at the time of the initial injury but because she was pregnant it was probably not considered. Dr. Edwards stated it was difficult to answer to a reasonable degree of medical certainty whether there had been any physical worsening of Russell's condition because although there was "an objective physical finding [of nerve distribution]," it contained "a subjective component to it." He affirmed there was a disc pathology that was compressing the nerve root as early as September 2010. He stated, "[S]he doesn't have any weakness in her

muscles that are innervated by that particular nerve. . . . [I]t's the symptoms of discomfort, predominantly, that can certainly worsen." Dr. Edwards could not state to a reasonable degree of medical certainty that there was a "chemical leaking affecting the nerve root."

In the order before us, the Commission noted it reviewed all "subjective and objective" evidence and stated it was "cognizant of the fact that testimony from both doctors and statements out of medical reports can be cherry-picked to support either position." The Commission stated it did not find that "in this, or any other case, objective evidence is required to establish a change of condition." Rather, based on a review of all of the evidence, it assigned "more weight to the objective medical evidence including the MRI scans and testimony and opinion of Dr. Edwards than to [Russell's] subjective complaints." It found that although there was "*some*" evidence Russell may have suffered a change of condition for the worse, "the *preponderance* of the evidence, both subjective and objective," did not establish such a change. The Commission found:

> [Russell was] unable to establish that she had any new complaints at this time that were not present at the time of the original award, she was unable to establish when she thought her condition worsened and she was unable to establish that her need for surgery was new or occurred after the original award.

The Commission stated it gave more weight to Dr. Edwards's testimony than Dr. Merritt's because Dr. Merritt himself deferred to Dr. Edwards's judgment. The Commission found both doctors ultimately testified the pre-MMI and post-MMI MRIs were the same. It also noted that Dr. Edwards testified Russell's disc protrusion had been contacting the nerve in the same way throughout the course of her claim. The Commission examined whether Russell's claim of leg pain was present at the time of the original injury and noted that she indeed complained of leg pain at that time. Further, the Commission found there was no support for Russell's contention that her need for surgery was new or developed after the original award. This appeal followed.

**ISSUE ON APPEAL**

Did the Commission err in finding Russell failed to prove a change of condition for the worse?

**STANDARD OF REVIEW**

The South Carolina Administrative Procedures Act establishes the standard of review for decisions by the Appellate Panel of the Commission. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). "In workers' compensation cases, the [] Commission is the ultimate fact finder." *Shealy v. Aiken County*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). The Commission is "specifically reserved the task of assessing the credibility of the witnesses and the weight to be accorded evidence." *Robbins v. Walgreens & Broadspire Servs., Inc.*, 375 S.C. 259, 264, 652 S.E.2d 90, 93 (Ct. App. 2007).

Thus, this court "will not substitute its judgment for that of the [C]ommission as to the weight of the evidence on questions of fact." *Therrell v. Jerry's Inc.*, 370 S.C. 22, 25, 633 S.E.2d 893, 894 (2006). "[Appellate courts] may reverse or modify the [C]ommission's decision if [a p]etitioner has suffered the appropriate degree of prejudice and the [C]ommission's decision is [a]ffected by an error of law or is 'clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.'" *Id.* at 25, 633 S.E.2d at 894–95 (quoting S.C. Code Ann. § 1-23-380(A)(5)(e) (Supp. 2022)). "It is not within our province to reverse findings of the Commission which are supported by substantial evidence." *Broughton v. South of the Border*, 336 S.C. 488, 496, 520 S.E.2d 634, 637 (Ct. App. 1999). "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the [Commission] reached." *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 519, 466 S.E.2d 357, 359 (1996). The mere "possibility of drawing two inconsistent conclusions from the evidence does not prevent [the Commission's] finding from being supported by substantial evidence." *Grant v. S.C. Coastal Council*, 319 S.C. 348, 353, 461 S.E.2d 388, 391 (1995) (quoting *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n*, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984)).

**LAW/ANALYSIS**

Russell argues the Commission once again required her to prove a change of condition for the worse using an "objective evidence" standard instead of the preponderance of the evidence. We disagree.

A claimant may seek to reopen an award under the Workers' Compensation Act if there has been a change in condition. S.C. Code Ann. § 42-17-90 (2015) (providing that upon the motion of any party based upon a change of condition,

any award may be reviewed and thereafter diminished or increased). "The purpose of this section is to enable the [Commission] to change the amount of compensation, including increasing compensation when circumstances indicate a change of condition for the worse." *Clark v. Aiken Cnty. Gov't*, 366 S.C. 102, 108, 620 S.E.2d 99, 102 (Ct. App. 2005). "A change in condition occurs when the claimant experiences a change in physical condition as a result of her original injury, occurring after the first award." *Gattis v. Murrells Inlet VFW # 10420*, 353 S.C. 100, 109, 576 S.E.2d 191, 196 (Ct. App. 2003). Thus, "[t]he issue before the Commission is sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based." *Id.* (quoting *Krell v. S.C. State Highway. Dep't*, 237 S.C. 584, 588–89, 118 S.E.2d 322, 324 (1961)).

The determination of whether a claimant experiences a change of condition is a question for the fact finder. *Krell*, 237 S.C. at 588, 118 S.E.2d at 323–24.

> [I]t is not the province of [appellate courts] to determine whether the greater weight of the evidence supported the finding that a change had taken place in the condition of the claimant such as would warrant an extension or enlargement of the award, or whether the greater weight of the evidence supported the finding that such change resulted from the injury. . . .

*Id.* (quoting *Cromer v. Newberry Cotton Mills*, 201 S.C. 349, 371, 23 S.E.2d 19, 28 (1942)).

The order before us specifically sets forth that the Commission did not require Russell to provide objective evidence to establish a change of condition. The Commission went to great lengths to emphasize that it considered all of the evidence, objective and subjective. The Commission found the preponderance of the evidence supported the conclusion that Russell did not suffer a change of condition for the worse. The order clearly sets forth the Commission's findings of fact and conclusions of law. The order shows that the Commission used the proper standard when making its determination, and it did not commit an error of law. *See Fishburne v. ATI Sys. Int'l*, 384 S.C. 76, 87, 681 S.E.2d 595, 600 (Ct. App. 2009) (noting the Commission is given discretion to weigh and consider all the evidence, including both lay and expert testimony).

Russell additionally argues the Commission's factual finding that she did not suffer a change of condition for the worse is not supported by substantial evidence. We disagree.

> "Substantial evidence" is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action.

*Gattis*, 353 S.C. at 108, 576 S.E.2d at 195 (quoting *Lark*, 276 S.C. at 135, 276 S.E.2d at 306). "When there is a conflict in the evidence, either by different witnesses or in the testimony of the same witness, the findings of fact of the Commission are conclusive." *Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 492–93, 541 S.E.2d 526, 528 (2001).

As the Commission stated, some evidence shows that Russell suffered a physical change of condition for the worse based on her subjective complaints. Both doctors agreed that Russell's complaints of pain had increased since reaching MMI. Russell stated the pain in her legs was worse than before she reached MMI, and Dr. Edwards said he had no reason to doubt her complaints. Dr. Merritt wrote that because Russell's complaints had worsened, her condition had worsened. However, it is solely within the province of the Commission to weigh the evidence and make the determination of whether the preponderance of the evidence supports a physical change of condition. Dr. Edwards could not say there had been a physical change in Russell's condition. He opined that she would have been a candidate for surgery at the time of the initial injury. He affirmed there was a disc pathology that was compressing the nerve root as early as September 2010. The Commission weighed all of the evidence and decided that the preponderance of the evidence did not support Russell's claim of a change of condition for the worse. Because reasonable minds could reach the same conclusion as the Commission based on the preponderance of the evidence, we find the Commission's determination was supported by substantial evidence. *See Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 340, 513 S.E.2d 843, 846 (1999) ("Expert medical testimony is designed to aid the Commission in coming to the correct conclusion; therefore, the Commission determines the weight and credit to be given to the expert testimony."); *see also Robbins*, 375 S.C. at 263, 652 S.E.2d at 93 (holding there was no change of condition for the worse when the claimant

testified his back pain was "much worse" than before and evidence before and after the settlement of his claim showed the same condition).

**CONCLUSION**

Accordingly, the Commission's order is

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**