## 17614

L. C. ALLEN, Claimant-Respondent, v. BENSON OUTDOOR ADVERTISING COMPANY and Federal Insurance Company, Appellants

(112 S. E. (2d) 722)

*Messrs. Watkins, Vandiver, Freeman & Kirven,* of Anderson,·*for Appellants,*

*Charles Welborn, Esq.,* of Anderson, *for Respondent-Appellant,*

February 10, 1960.

OXNER, Justice.

This is a proceeding under the Workmen's Compensation Act to review an award on the ground of alleged change of condition. Section 72-359 of the 1952 Code.

Claimant, a Negro about 35 years of age, was employed by the Benson Outdoor Advertising Agency. On the afternoon of July 31, 1957, he was engaged along with another employee in applying advertising material to a large billboard near Anderson, South Carolina. While standing over two buckets on the back of a truck, he reached down to pick up a third bucket containing about 60 lbs. of paste. As he straightened up, he says something "slipped" and "came apart" in his back causing him to drop the bucket. He worked the remainder of that afternoon but was unable to report for work the following morning. A day or two later the manager of the advertising company called at his home and took him to the office of Dr. W. C. Bolt, an Anderson

physician. Dr. Bolt diagnosed his trouble as low back strain and prescribed for him accordingly. On August 9th his back was x-rayed but disclosed no fracture. After making another examination on August 13th, Dr. Bolt concluded that claimant could return to work but should do no lifting. Claimant returned to work on August 14th and continued on his job without any loss of time until November 14, 1957, when he was discharged for reasons unconnected with this controversy.

On October 15, 1957, the parties reached an agreement under which the insurance carrier agreed to pay all medical bills and compensation for one week. This agreement was promptly filed with the Industrial Commission and approved by that body on October 26th. On November 7th the week's compensation was paid, at which time claimant signed the Standard form of final compensation settlement receipt, in which he acknowledged the payment of $28.50 "in final settlement and satisfaction of all claims for compensation subject to review as provided by law" on account of the injury sustained on July 31st. This receipt was filed with the Commission on November 9, 1957.

Immediately after his discharge on November 14th, claimant sought unsuccessfully to obtain other employment. He has not worked since and the only money received by him has been unemployment compensation.

On September 29, 1958, approximately ten months after executing the final settlement receipt, claimant filed with the Commission a request that the award be reviewed on account of change of condition. Hearings were held on November 19th and December 5, 1958. Thereafter the hearing Commissioner found that claimant had "suffered a change of condition for the worse" as a result of the accident of July 31, 1957 and was totally disabled. An award of compensation was accordingly made on this basis which was approved and adopted by the full Commission. On appeal to the Circuit Court by the employer and insurance carrier, the award of the Industrial Commission was affirmed.

By appropriate exceptions the employer and carrier contend on this appeal (1) that claimant did not suffer an injury by accident within the contemplation of the Workmen's Compensation Act, (2) that there was no proof of causal connection between the alleged injury of July 31, 1957 and the disability claimant now asserts, and (3) that the Industrial Commission was without jurisdiction to review the award because such review was not made within twelve months from the date of the last payment of compensation.

The question of whether claimant sustained an injury by accident on July 31, 1957 was finally adjudicated by the agreement as to compensation which was duly approved by the Industrial Commission and formal award entered thereon. Appellants cannot now retry the basic issue of liability. *Globe Indemnity Co. v. Reid,* 92 Ga. App. 828, 89 S. E. (2d) 905; *Blackburn v. Olson,* 69 Idaho 428, 207 P. (2d) 1160; *Vass' Case,* 319 Mass. 297, 65 N. E. (2d) 549; *Pinkston Hardware Co. v. Hart,* 159 Okl. 6, 12 P. (2d) 681; 100 C. J. S., Workmen's Compensation, § 407, p. 214; 101 C. J. S., Workmen's Compensation, §§ 853 and 897. In *Tucker v. Lowdermilk,* 233 N. C. 185, 63 S. E. (2d) 109, 111, the Court said: "An agreement for the payment of compensation when approved by the Commission is as binding on the parties as an order, decision or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal." The only issue now open is whether there has been a worsening of the injury on which the original award was based. Larson, Workmen's Compensation Law, Section 81.32; *Cromer v. Newberry Cotton Mills,* 201 S. C. 349, 23 S. E. (2d) 19, 22. In speaking in the *Cromer case* of the effect of an original award in a proceeding to review same for change in condition under Section 72-359, the Court said: "No doubt the first award was conclusive in all respects other than for a change in condition, but as to this the power and jurisdiction of the Commission was a continuing one for this purpose."

In the proceedings before the Industrial Commission, the parties apparently recognized the conclusive effect of the original award as to the compensability of the injury, for this issue is not referred to either in the opinion of the hearing Commissioner or that of the full Commission. In fact, it is not mentioned in the order of the Circuit Judge.

The second question is stated by appellants as follows: "Was there any competent evidence to prove causal connection between claimant's alleged injury of July 31, 1957, and his alleged disability of August, 1958?"

Claimant testified that the pain from his back injury has grown progressively worse and that he is now unable to do any work. He was examined by Dr. S. H. Huff, an orthopedic surgeon in Anderson, on August 14, 1958. Dr. Huff concluded that he should be given a myelogram test which he says was done by a Dr. Davis in September. According to Dr. Huff, the "myelogram revealed herniated nucleus deformities at L4 and L5 interspaces, consistent with and characteristic of a herniated disc." He concluded that claimant "definitely had nerve root pressure and since it was not more on one side than the other, it was a central disc."

Dr. Huff further testified:

"Q. Can you say within any reasonable medical certainty, that the condition you found could be the result of the injury of July 1957? A. At the time I examined him, I felt he had a disc. He stated his back had hurt him continuously for the past twelve months and perhaps since the accident, and if this was true I felt the accident caused it or aggravated it. I do not think this far afterwards, you could be any more positive than that, if the history is correct.

\* \* \*

"Q. What, in your professional opinion, is necessary to correct the condition you found? A. I felt L. C. should have an exploration of the 3rd and 4th interspaces and if a protruding disc is found, to remove it and then do a spinal fusion.

\* \* \*

"Q. Doctor, an injury such as the claimant described, would such an injury be conducive to the condition you found? A. Yes.

"Q. And that would be most probably what caused it, if that history is correct? A. Yes, unless he did something else. The stooping over and trying to snap something up, is the most common way of doing it, the twisting way of doing it."

Dr. Bolt who, as heretofore stated, was the first physician who examined claimant, said that the x-rays disclosed a "slight narrowing of the 3L interspace with osteoarthritic lipping of 3rd and 4th vertebra", which he thought developed over a long period of time. He said he made another examination on December 31, 1957 and found "more muscular tenderness." Further examinations by him during the spring of 1958 and on November 24, 1958 disclosed a continuance of this muscular tenderness. Dr. Bolt further testified:

"Q. In his present condition, you can not say whether or not he is able to return to work? A. No, but I don't guess he is able to return to his normal work. I don't think he is. I think he has pain and this man has to do manual work.

"Q. As a common laborer, is he able to do that? A. I have just said he is not able to do that.

"Q. He is not able to do it. Now, I believe between July 31st, 1957 up until December 31, 1957, he got better for a time because he did work for a while? A. He got better but he did not get better long.  *  *  *  Yes, he got better until December, that is right.

"Q. Do you have the approximate dates? A. August 14th, to December 31st, he was better  *  *  *  at least I did not see him during that time.

"Q. When you saw him in November this year, is his condition worse than it was when you saw him on July 31st, 1957? A. Yes, it is worse. The physical findings are greater.

"Q. It is worse? A. Yes."

Claimant testified positively that he never sustained an injury of any kind to his back prior to July 31, 1957 and until he had this accident he had never had any trouble with his back.

We think it may be reasonably inferred from the foregoing testimony that there has been a worsening of claimant's physical condition and that his present disability is the result of the injury sustained on July 31, 1957. *Cromer v. Newberry Cotton Mills, supra,* 201 S. C. 349, 23 S. E. (2d) 19; *Crenshaw v. Pendleton Mfg. Co.,* 215 S. C. 66, 54 S. E. (2d) 61. The question of whether there is any causal connection between the injury and claimant's present condition was a question of fact for the Industrial Commission. We cannot say that the conclusion of that body is without evidentiary support.

The third and last question is whether the Industrial Commission had jurisdiction to review the original award. By Section 72-359 of the 1952 Code, the Commission is authorized "upon its own motion or upon the application of any party in interest on the ground of a change in condition" to review an award. But such authority is subject to the following limitation: "No such review shall affect such award as regards any moneys paid and no such review shall be made after twelve months from the date of the last payment of compensation pursuant to an award under this Title."

In the instant case the last and only payment of compensation was made on November 7, 1957. The application for review was filed on September 29, 1958, or within one year from the date of the last payment of compensation, but there was no hearing thereon until November 19, 1958, or about twelve days after the expiration of the one year period. Appellants say that the foregoing statutory limitation "is directed to the Industrial Commission rather than to the parties to the action", and that it is not sufficient for the application for review to be made within one year after the

last payment of compensation but the application must be heard by the Commission within that period.

We do not agree with appellants' view. It represents a literal and strict construction of Section 72-359 when under the well-settled rule a liberal construction is required. To sustain appellants' contention would lead to a rather unreasonable result clearly not within the intent of the Legislature. An application might be seasonably made but due to crowded dockets or other causes could not be heard within the statutory period. Nor could it have been reasonably intended that the Industrial Commission intended that the Industrial Commission by inaction could in effect destroy its jurisdiction to hear an application timely filed. We have gone no further than to hold that the application for review must be made within one year after the last payment of compensation. *Wallace v. Campbell Limestone Co.,* 198 S. C. 196, 17 S. E. (2d) 309. Similar statutes have been construed in other jurisdictions as only requiring that the application for review be made within the statutory period. *Wilkins v. State Compensation Commissioner,* 120 W. Va. 424, 198 S. E. 869; *Knight v. Ford Body Co.,* 214 N. C. 7, 197 S. E. 563; *Candado Stevedoring Corporation v. Willard,* D. C., 91 F. Supp. 77, affirmed 2 Cir., 185 F. (2d) 232. In *Wilkins v. State Compensation Commissioner, supra,* the Court said [120 W. Va. 424, 198 S. E. 871]:

"The filing of a claim for further compensation within the statutory period and partial but not complete development thereof within such period, with loss of jurisdiction by the commissioner during the progress of the case, would be an absurd result which the legislature certainly did not have in mind, and we feel warranted in holding that the statute in question should be given a construction which permits the commissioner to hear and pass upon any application in writing for a further adjustment of a claim, if filed within the statutory period applicable to the nature of the claim filed."

The application for review here having been filed within one year after the last payment of compensation, we think the Industrial Commission had jurisdiction to hear it.

There are certain exceptions by respondent relating to taxation of costs but his counsel stated in oral argument that if the order of the Circuit Court was affirmed, it would be unnecessary to pass upon his exceptions. Accordingly, we leave them undetermined.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.