798 S.E.2d 449

**Sara Y. WILSON, Appellant,**

v.

**CHARLESTON COUNTY SCHOOL DISTRICT, Respondent.**

Appellate Case No. 2014-002596
Opinion No. 5475
Court of Appeals of South Carolina.
Heard November 3, 2016
Filed March 22, 2017
Rehearing Denied June 23, 2017

---

444

John S. Nichols and Blake A. Hewitt, both of Bluestein
Nichols Thompson & Delgado, LLC, of Columbia; and Tiffany

R. Spann-Wilder, of Spann Wilder Law, LLC, of North Charleston, for Appellant.

Stephen Lynwood Brown, Leslie Michelle Whitten, and Catherine Holland Chase, all of Young Clement Rivers, LLP, of Charleston, for Respondent.

MCDONALD, J.:

In this appeal from a circuit court order affirming the Appellate Panel of the South Carolina Workers' Compensation Commission (the Appellate Panel), Sara Wilson argues the Appellate Panel erred in (1) holding res judicata barred her change of condition claim because although she had experienced situational anxiety and depression in the past, she had not suffered from endogenous depression until after her work injury and subsequent back surgery and (2) determining her depression had to begin or worsen between January 2008 and January 2009 to be compensable. We reverse and remand.

**FACTS AND PROCEDURAL HISTORY**

While employed as a data entry clerk for the Charleston County School District (School District), Wilson was a bystander to a fight between two male students on May 6, 2006.[1] The students inadvertently pushed into Wilson and pinned her against a marble countertop, which resulted in injuries to her neck and back.[2] Wilson filed a Form 50 to initiate her claim on August 9, 2006, and alleged permanent and total disability at an October 2, 2007 hearing. On November 29, 2007, the single commissioner found Wilson was not permanently and totally disabled but had a 45% disability to her back due to her cervical and lumbar injuries. The Form 19 reflecting the date of last payment of compensation was filed January 25, 2008, and an Amended Form 19 signed by Wilson was filed May 7, 2008.

On January 6, 2009, Wilson filed a Form 50 Notice of Claim alleging a change of condition, asserting her back injury was affecting her mental health. Wilson did not request a hearing

---

1. Wilson is 4'10' tall and weighed approximately 115 pounds at the time of her injury.

2. In March 2007, Wilson underwent surgery to remove a herniated disc and fuse two vertebrae.

at this time. On March 29, 2011, Wilson filed another Form 50 and requested a hearing on the change of condition claim.

The single commissioner heard Wilson's change of condition claim on June 29, 2011. At the hearing, Wilson indicated she was in so much pain she did not want to get up in the morning. She testified she did not go out with her friends anymore and felt helpless. She admitted to taking medication for anxiety—which began following the death of her husband—at the time of her initial hearing before the single commissioner. Still, Wilson explained that she did not experience significant depression until after the pain from her back injury worsened. In support of her claim, Wilson pointed out that it was not until May 2008, that her primary care physician, Dr. Robert Olivero, referred her for psychiatric treatment. The parties submitted the deposition transcript of Wilson's psychiatrist, Dr. Samuel H. Rosen, who testified that Wilson had suffered situational anxiety and depression off and on for years. His initial appointment note indicates:

Her past psychiatric history includes a depressive episode following the death of her husband in 2003. They had been happily married for [thirty-nine] years. Her treating physician at the time put her in the hospital for a couple of days and started her on Prozac[,] which either was helpful or time itself was helpful and she returned to full function. She had an ... episode that may have been anxiety related in 2005. The workup was negative and while in the office of [Dr.] Jervey she was tearful and upset. He placed her on Zoloft 100 mg.... After a few months, this was tapered to 25 mg and as noted above by the time of the incident at the school, she was once again back to her normal self.

There's no history of alcohol or drug abuse. No history of other mood disorders. No history of other psychiatric disorder.

Dr. Rosen explained that when he first saw Wilson on May 16, 2008, she did not have endogenous depression.[3] However, his record from her May 23, 2011 appointment notes Wilson was

---

**3.** Dr. Rosen elaborated, "Endogenous depression is characterized by a set of symptoms, including poor sleep, appetite, energy, concentration and other symptoms. And if they exist as a group and are persistent over a month's time, we assume that there's biochemistry that is also active in the depression."

"sleeping much more than normal" and "had poor concentration, lack of interest and motivation, decreased socialization and decreased energy." Dr. Rosen testified Wilson did have endogenous depression at the time of his June 24, 2011 deposition. He opined that although she previously suffered from some depression and anxiety, "the work injury either exacerbated or caused the new episode to begin." He interpreted Dr. Olivero's May 2008 psychiatric referral to indicate the primary care physician was no longer able to comfortably treat Wilson's depression—she needed treatment from a specialist.

Dr. Rosen also reviewed the vocational assessment of Dr. William Stewart from September 2007, which indicated Wilson was receiving medications and treatment for anxiety and depression related to her work injury. The following exchange occurred:

[School District]: Okay.... is it your opinion that Ms. Wilson had anxiety and depression from her work injury and required medication and treatment at least by September of 2007?

[Dr. Rosen]: Yeah, that the work injury was causing some depression and anxiety by—right.

[School District]: Okay. And then when she saw you in May of 2008, it wasn't endogenous, but it is now?

[Dr. Rosen]: It wasn't—right. It didn't appear to be endogenous then but that changed.

The single commissioner made several findings relating to jurisdiction, the statute of limitations, laches, and Wilson's change of condition claim regarding her psychological condition. Citing *Estridge v. Joslyn Clark Controls, Inc.*,[4] the single commissioner found Wilson "has proven a change of condition for her psychological issues" and concluded Wilson was entitled to ongoing psychiatric care and temporary total disability benefits.

The School District timely appealed and the Appellate Panel reversed, finding Wilson had not proven a change of condition

---

4. 325 S.C. 532, 537–38, 482 S.E.2d 577, 580 (Ct. App. 1997) (explaining that if the appellant's mental condition "is causally connected and is a newly manifested symptom of his original injury which has caused a worsening of his condition, then it is properly considered").

relative to her psychological condition. The Appellate Panel further determined the doctrine of res judicata barred Wilson from asserting the psychological claim. The circuit court affirmed the Appellate Panel and subsequently denied Wilson's motion to alter or amend.

## STANDARD OF REVIEW

The Administrative Procedures Act establishes the standard of review for decisions of the Appellate Panel. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). "The Appellate Panel is the ultimate fact finder in workers' compensation cases, and if its findings are supported by substantial evidence, it is not within our province to reverse those findings." *Mungo v. Rental Unif. Serv. of Florence, Inc.*, 383 S.C. 270, 279, 678 S.E.2d 825, 829–30 (Ct. App. 2009). This court can reverse or modify the decision of the Appellate Panel only if the substantial rights of the appellant have been prejudiced "because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010); S.C. Code Ann. § 1–23–380(5)(d)–(e) (Supp. 2016).

## LAW AND ANALYSIS

### I. Res Judicata

Wilson argues the Appellate Panel erred in holding res judicata barred her change of condition claim because although she experienced situational anxiety and depression in the past, she did not suffer from endogenous depression until after her work injury and subsequent back surgery. We agree.

"Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *S.C. Pub. Interest Found. v. Greenville Cty.*, 401 S.C. 377, 385, 737 S.E.2d 502, 506 (Ct. App. 2013) (quoting *Judy v. Judy*, 393 S.C. 160, 172, 712 S.E.2d 408, 414 (2011)). "[T]he fundamental purpose of *res judicata* . . . is to ensure that 'no one should be twice sued for the same cause of action.'" *Judy*, 393 S.C. at 173, 712 S.E.2d at 414 (quoting *First Nat'l Bank of Greenville v. U.S. Fid. & Guar. Co.*, 207

S.C. 15, 24, 35 S.E.2d 47, 56 (1945)). "The doctrine requires three essential elements: (1) the judgment must be final, valid and on the merits; (2) the parties in the subsequent action must be identical to those in the first; and (3) the second action must involve matter properly included in the first action." *Estridge*, 325 S.C. at 539, 482 S.E.2d at 581 (quoting *Owenby*, 313 S.C. at 183, 437 S.E.2d at 131). "Under the doctrine of res judicata, '[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit.'" *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999) (quoting *Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Comm'n of S.C.*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987)).

Relying on *Owenby v. Owens Corning Fiberglas*,[5] and *Krell v. South Carolina State Highway Department*,[6] the Appellate Panel found Wilson could have raised a psychological injury claim at the October 2, 2007 hearing but did not. Therefore, the Appellate Panel reasoned res judicata barred Wilson's change of condition claim for psychological injury.

In *Krell*, our supreme court explained that "[i]f a review of a compensation agreement or settlement is sought on the change in the condition of the employee, a change in condition must be shown, and it must be causally connected with the original compensable accident." 237 S.C. at 588, 118 S.E.2d at 323.

> In a reopening proceeding, the issue before the Commission is sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based. If [the] claimant sustained injuries at the time of the original action which he knew about at the time of his claim but for some reason failed to include in the claim, he cannot for the first time assert disability from these injuries in a petition based on "[c]hange of condition."

*Id.* at 588–89, 118 S.E.2d at 324.

In *Owenby*, the single commissioner found the original claim for compensation was limited to the physical manifestations

---

5. 313 S.C. 181, 437 S.E.2d 130 (Ct. App. 1993).

6. 237 S.C. 584, 118 S.E.2d 322 (1961).

caused by the loss of a portion of the claimant's finger because the evidence connecting the alleged psychological injury to the physical injury was not credible. 313 S.C. at 182, 437 S.E.2d at 131. The claimant subsequently filed a change of condition action based on the amputation of an additional portion of her finger and the worsening of her psychological condition. *Id.* Although the single commissioner awarded an added percentage for the loss of the additional portion of the finger, he denied an award for psychological injury, finding the claim barred by the doctrine of res judicata. *Id.*

The Appellate Panel deleted the commissioner's res judicata finding and instead held there was insufficient credible evidence to support the claim for psychological injury. *Id.* The circuit court reversed the Appellate Panel's res judicata ruling. *Id.* at 182–83, 437 S.E.2d at 131. The court of appeals affirmed, finding "ample evidence of record that any psychological problems currently suffered by [the claimant] are a continuation of her previously existing condition which was ruled upon in the initial action." *Id.* at 183, 437 S.E.2d at 131– 32. The court further held that because the claimant's psychological injury was not causally connected to her original injury, it could not be considered based upon a change of condition since that proceeding "is 'sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based.'" *Id.* at 183, 437 S.E.2d at 132 (quoting *Krell,* 237 S.C. at 588–89, 118 S.E.2d at 324).

In *Estridge*—on which the single commissioner relied in the current case—the single commissioner found the claimant's psychological injury was not compensable based on a change of condition because "it was not included as an injury in the order of June 19, 1991 or in the award of November 27, 1991." 325 S.C. at 536, 482 S.E.2d at 579. The Appellate Panel affirmed and the circuit court agreed, concluding, in relevant part, that the issue was neither raised to nor decided by the single commissioner in the initial proceedings. *Id.* The circuit court held in the alternative that the claim was barred by res judicata. *Id.* In distinguishing *Estridge* from *Owenby,* the court of appeals found "[u]nlike the initial award in *Owenby,* neither the order of June 19, 1991 nor the award of November 27, 1991[,] resolves an issue between these parties as to [the] claim for psychological injury." *Id.* at 540, 482 S.E.2d at 581.

The court noted that "[i]n *Owenby*, a finding of fact was made in the order which finally determined that a legal requirement was not proved; that is, a causal relationship between the alleged psychological condition and the original physical injury. No such finding was made here." *Id.* The court elaborated:

The order and award also cannot be said to resolve a claim for psychological injury by implication, since they are susceptible to the conclusion that [the claimant] may have had such causally related symptoms, but they did not impact on his condition at that time. Although the evidence presented by the vocational expert at the first hearing indicated a psychological problem had manifested itself, his testimony can be fairly interpreted as discounting any such symptoms as a basis for disability. *A symptom which is present and causally connected, but found not to impact upon the claimant's condition at the time of the original award, may later manifest itself in full bloom and thereby worsen his or her condition.* Such an occurrence is within the reasons for the code section involving a change of condition. Therefore, it is not barred by res judicata in a change of condition proceeding merely because it was not discussed in the initial award.

*Id.* (emphasis added) (citation omitted).

In *Mungo*, the claimant sustained an admitted compensable injury to her cervical spine in May 2000 and reached maximum medical improvement on May 2, 2003. 383 S.C. at 275, 678 S.E.2d at 827. On July 23, 2004, the claimant filed a Form 50 request for hearing, alleging a change of physical condition as well as "significant psychological conditions." *Id.* at 276, 678 S.E.2d at 828. Following the hearing, the single commissioner denied the claimant's request for benefits for a change of condition because the claimant "may not now raise the issue of depression when she could have done so [at the] last hearing." *Id.* (alteration in original). Although the Appellate Panel affirmed the ruling, the circuit court reversed the single commissioner's findings, noting "the reliable, probative and substantial evidence of record proves that any symptoms of depression or other psychological conditions before the first hearing were mild, undiagnosed and untreated; and became full-blown thereafter, meeting formal diagnostic criteria and

necessitating formal treatment by [the doctor] only after the first hearing." *Id.* at 276–77, 678 S.E.2d at 828.

This court found "the circuit court was correct to hold the single commissioner and the Appellate Panel committed legal error in ruling they could not consider the issue of depression raised by Claimant at the change of condition hearing." *Id.* at 284, 678 S.E.2d at 832. The court cited *Estridge* favorably for the proposition that "[a mental] condition which is induced by a physical injury, is thereby causally related to that injury[, and] . . . may properly be compensated in a change of condition proceeding as a part of the original injury." *Id.* (alterations in original). Claimant could properly raise the issue of depression at the change of condition hearing because it was induced by her original physical injury and "any symptoms of depression she experienced prior to the June 3, 2003 hearing were mild, undiagnosed, and untreated." *Id.*

The *Mungo* court further found that because the claimant "did not raise the issue of depression in her original Form 50 or at the initial hearing and because all records from [the doctor's] June 3, 2003 evaluation, in which she mentioned psychological effects from the physical injury, were excluded from evidence, the doctrine of res judicata does not prevent this issue from being litigated." *Id.* Accordingly, "the change of condition hearing was the first opportunity a single commissioner could consider [c]laimant's psychological condition, and it was error for the single commissioner and the Appellate Panel to not consider the issue." *Id.*

Wilson's medical records note she had an episode of depression following her husband's death in 2003 and an episode that may have been anxiety related in 2005. However, Wilson testified she did not experience significant depression until after the pain from her back injury increased significantly. In May 2008, Dr. Olivero referred Wilson to Dr. Rosen for psychiatric treatment because, in Dr. Rosen's opinion, "[Dr. Olivero] felt things were not going well and wanted some additional help in treating the anxiety and depression." Wilson testified that prior to seeing Dr. Rosen, she had never seen a psychiatrist.

Dr. Rosen opined "that although she had had depression and anxiety in the past, the work injury either exacerbated it

or caused the new episode to begin." He testified that according to Dr. Stewart's September 20, 2007 report, "the work injury was causing *some* depression and anxiety" at least by September 2007. He explained that Wilson's depression "didn't appear to be endogenous" when he first saw her on May 16, 2008, "but that changed." Dr. Stewart's report—submitted by Wilson at the initial hearing—states "Ms. Wilson is suffering *some* psychological overlay (adjustment disorder with depression and anxiety) because of these injuries, her ongoing chronic pain problems, and her inability to work." (emphasis added). The report further provides Wilson "has required, and continues to require medical psychological care ... including followup office visits and prescribed psychotropic medications for anxiety and depression." [7]

The Appellate Panel correctly found "no doctor has opined that [Wilson] did not have work related depression prior to the October 2, 2007 hearing" and "no doctor has opined that [Wilson's] work related depression began after [the initial hearing]." However, both Dr. Stewart and Dr. Rosen noted Wilson was suffering from *some* anxiety and depression—although not endogenous depression—prior to the initial hearing. Our review of the record reveals the substantial evidence indicates Wilson's psychological condition worsened at some point after the initial hearing and prior to her filing of the January 6, 2009 Form 50 alleging the change of condition. *See Estridge*, 325 S.C. at 540, 482 S.E.2d at 581 ("A symptom which is present and causally connected, but found not to impact upon the claimant's condition at the time of the original award, may later manifest itself in full bloom and thereby worsen his or her condition. Such an occurrence is within the reasons for the code section involving a change of condition."). In May 2008, her primary care physician referred her—for the first time—to a psychiatrist, who subsequently diagnosed her with endogenous depression. Regardless of Dr. Rosen's opinion regarding Dr. Olivero's referral, there would have been no

---

7. In the order addressing Wilson's initial claim, the single commissioner rejected the vocational assessment prepared by Dr. Stewart as "internally inconsistent" and at odds with the medical evidence. This finding was not appealed. Interestingly, the Appellate Panel relied on this vocational assessment in denying Wilson's change of condition claim.

reason for him to refer Wilson to a psychiatrist if her depression had not changed. Although Dr. Rosen was not able to pinpoint a specific date when Wilson's psychological injury worsened from *some* anxiety and depression to endogenous depression, he stated multiple times throughout his June 24, 2011 deposition that at some point after his first appointment with Wilson in May 2008, her depression became endogenous.

Wilson did not raise the issue of depression in her original Form 50 or at the initial hearing. The single commissioner's November 29, 2007 order notes Wilson "has not asked for any treatment for anxiety and that she only had an increase in her medications because of her husband but not due to this accident." Because Wilson's condition had not yet progressed to endogenous depression, it could not have been raised in the 2007 action; thus, res judicata does not apply. *See Mungo*, 383 S.C. at 282, 678 S.E.2d at 831 ("Therefore, even if the mental condition was not raised at the original hearing, it may be raised at the change of condition hearing."); *Estridge*, 325 S.C. at 540, 482 S.E.2d at 581 ("The doctrine of res judicata only acts to preclude relitigation of issues actually litigated or which might have been litigated in the first action."). Accordingly, we reverse the circuit court's order affirming the Appellate Panel's res judicata ruling because this decision is affected by an error of law.

## II. Timing

■ Wilson argues the Appellate Panel erred in determining her depression had to begin or worsen between January 2008 and January 2009 to be compensable. We agree.

■ "A change in condition occurs when the claimant experiences a change in physical condition as a result of her original injury, occurring after the first award." *Gattis v. Murrells Inlet VFW No. 10420*, 353 S.C. 100, 109, 576 S.E.2d 191, 196 (Ct. App. 2003). Just as physical changes of condition are properly considered when reviewing a claimant's initial award, so too are mental changes of condition. *Estridge*, 325 S.C. at 537–38, 482 S.E.2d at 580. If the mental condition is causally connected to the original injury, is a newly manifested symptom of that injury, and has caused a worsening of the claimant's condition, then it is proper for the single commis-

sioner to consider the mental condition at a change of condition hearing. *Id.* at 538, 482 S.E.2d at 580.

A "change of condition" claim is governed by section 42–17–90 of the South Carolina Code:

> On its own motion or on the application of any party in interest on the ground of a change of condition, the Commission may review an award and on that review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this title, and shall immediately send to the parties a copy of the order changing the award. No such review shall affect such award as regards any monies paid and *no such review shall[8] be made after twelve months from the date of the last payment of compensation pursuant to an award provided by this Title.*

S.C. Code Ann. § 42–17–90(A) (Supp. 2006) (emphasis added).[9]

 "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Wigfall*, 354 S.C. at 110, 580 S.E.2d at 105. "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." *Id.* (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed. 1992)). "If a statute's language is plain, unambiguous, and conveys a clear meaning 'the rules of statutory interpretation are not needed and the court has no right to impose another meaning.'" *Id.* (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). "We are further bound by precedent to strictly construe statutes in derogation of the common law." *Id.* "Workers' compensation statutes provide an exclusive compensatory system in derogation of common law rights." *Id.*

---

**8.** In *Wigfall v. Tideland Utilities, Inc.*, our supreme court explained that "[t]he term 'shall' in a statute means that the action is mandatory." 354 S.C. 100, 111, 580 S.E.2d 100, 105 (2003). Likewise, in *Collins v. Doe*, the court explained that "[u]nder the rules of statutory interpretation, use of words such as 'shall' or 'must' indicates the legislature's intent to enact a mandatory requirement." 352 S.C. 462, 470, 574 S.E.2d 739, 743 (2002).

**9.** In 2007, the General Assembly amended the Workers' Compensation Act and certain related statutes. The current version of section 42–17–90(A) contains a preponderance of the evidence standard not present in the version applicable to Wilson's claims.

"As such, when reading a workers' compensation statute we strictly construe its terms, leaving it to the Legislature to amend and define its ambiguities." *Id.*

Citing *Allen v. Benson Outdoor Advertising Co.*, Wilson argues that as long as a change of condition claim is filed by the proper deadline, it can encompass a problem still in the process of turning serious. 236 S.C. 22, 112 S.E.2d 722 (1960). In *Allen*, the last and only payment of compensation was made on November 7, 1957. Although the application for review was filed on September 29, 1958, no hearing occurred thereon until November 19, 1958, twelve days after the expiration of the one-year statutory deadline. *Id.* at 29, 112 S.E.2d at 725. The employer and carrier argued on appeal that the statutory limitation "is directed to the Industrial Commission rather than to the parties to the action, and that it is not sufficient for the application for review to be made within one year after the last payment of compensation but the application must be heard by the Commission within that period." *Id.* at 29–30, 112 S.E.2d at 725. The court disagreed with appellants' view as "[i]t represents a literal and strict construction of [the relevant statute] when under the well settled rule a liberal construction is required." *Id.* at 30, 112 S.E.2d at 725. The court reasoned that sustaining appellants' argument would lead to "a rather unreasonable result clearly not within the intent of the Legislature." *Id.* The court continued:

An application might be seasonably made but due to crowded dockets or other causes could not be heard within the statutory period. Nor could it have been reasonably intended that the Industrial Commission by inaction could in effect destroy its jurisdiction to hear an application timely filed. We have gone no further than to hold that the application for review must be made within one year after the last payment of compensation.

*Id.* at 30, 112 S.E.2d at 725–26.

Here, the Appellate Panel found "no doctor has opined that the Claimant's work related depression began after October 2, 2007, or worsened between January 25, 2008 and January 25, 2009." Thus, it concluded Wilson failed to meet her burden of establishing the change of her condition necessary to satisfy the timing requirements of section 42–17–90(A) and *Allen.*

School District argues that if this court concludes Wilson's psychological claim is not barred by res judicata, it should affirm the denial of benefits because the Appellate Panel did not err when it found Wilson's change of condition did not occur within one year after the date of the last payment of compensation. We decline to accept this construction of the statute, which seeks to impose a requirement upon claimants not intended by the Legislature.

Wilson was injured on May 6, 2006, and filed a Form 50 to initiate her claim on August 9, 2006. Wilson alleged permanent and total disability at the October 2, 2007 hearing. On November 29, 2007, the single commissioner found Wilson was not permanently and totally disabled but had a 45% disability to her back due to her cervical and lumbar injuries. The Form 19 reflecting the date of last payment of compensation (on Wilson's initial claim) was filed January 25, 2008.

On January 6, 2009, Wilson filed a Form 50 Notice of Claim alleging a change of condition in that her back injury was affecting her mental health. She did not request a hearing at that time. Additionally, neither the Commission nor the School District requested a hearing. *See* S.C. Code Ann. § 42–17–90(A) (Supp. 2006) (*"On its own motion or on the application of any party in interest* on the ground of a change of condition, the Commission may review an award and on that review may make an award ending, diminishing or increasing the compensation previously awarded." (emphasis added)).

Although Wilson did not file the subsequent Form 50 requesting a hearing on her change of condition claim until March 29, 2011, we find her January 6, 2009 Form 50 Notice of Claim alleging a change of condition satisfied the statute's plain and unambiguous requirement that such a claim be filed within the twelve-month deadline. As the Appellate Panel's contrary determination is controlled by an error of law, we reverse the circuit court's order affirming this finding. *See Transp. Ins. Co.*, 389 S.C. at 427, 699 S.E.2d at 689–90.

## CONCLUSION

Based on the foregoing analysis, we reverse the circuit court's order affirming the decision of the Appellate Panel and

remand to the Appellate Panel for consideration of Wilson's change of condition claim.

**REVERSED AND REMANDED.**

LOCKEMY, C.J., and KONDUROS, J., concur.