620 S.E.2d 99

**Joseph Mark CLARK, Sr., Respondent,**

v.

**AIKEN COUNTY GOVERNMENT & South Carolina Property and Casualty Insurance Guaranty Association, formerly Legion Insurance Company, Appellants.**

**No. 4023.**

Court of Appeals of South Carolina.

Heard June 7, 2005.
Decided Sept. 12, 2005.

Mark D. Cauthen and R. Daniel Addison, both of Columbia, and David A. Wilson and Michael Allen Farry, both of Greenvile, for Appellants.

Franklin D. Beattie, Jr., of Georgetown, for Respondent.

CURETON, A.J.:

This is a workers' compensation case involving an award based on change of condition. The Workers' Compensation Commission found that Joseph Mark Clark, Sr. sustained a change of physical condition resulting in permanent and total disability, and the circuit court affirmed. We affirm as well.

## FACTS

The parties stipulated that Clark sustained an injury on July 12, 1999 in an accident arising out of and in the course of his employment with Aiken County. Clark twisted his lower back while attempting to unhook a trailer from a vehicle. The parties also stipulated to an average weekly wage and compensation rate.

In the original proceeding, the single commissioner found Clark reached MMI on January 20, 2000 and that he had sustained a 30% permanent partial disability as a result of the accident. He awarded benefits accordingly. Clark then appealed to the full commission. In his brief to the full commis-

sion, he requested, *inter alia,* that Dr. Martin Greenberg be designated his treating physician "to provide alternative medical treatment."

While the case was pending before the full commission, Clark's pain increased. Clark was seen by Dr. John Downey who, along with Clark's attorney, referred him to Dr. Greenberg. Dr. Greenberg recommended surgery to Clark's back and performed the surgery on July 27, 2001. Clark did not get permission from the County for Dr. Greenberg to treat him or perform the surgery.

On August 10, 2001 the County tendered and Clark in turn accepted payment of the monetary benefits awarded by the single commissioner.

On October 9, 2001, the full commission affirmed the single commissioner's order, adopting verbatim his findings of fact and conclusions of law. The full commission did not address the issue of whether Clark's condition had changed since he reached MMI, nor did the full commission address the request in Clark's brief that Greenberg be appointed his treating physician.

The surgery successfully alleviated Clark's pain for about four to six months. Then the pain returned, although it was not as severe. After examining Clark again, Dr. Greenberg determined that Clark was permanently vocationally disabled. Clark has not worked since March of 2000 when the County retired him based on disability.

In January 2002, Clark filed a Form 50 claiming a substantial change of condition. The single commissioner concluded that Clark sustained a worsening of his condition and had an impairment of more than 51% to his back. The single commissioner further concluded that the change in physical condition occurred after August 14, 2001. Accordingly, he awarded Clark benefits for total and permanent disability. The single commissioner also specifically found that the treatment by Dr. Greenberg was "necessary, reasonable and was an attempt to lessen [Clark's] disability." He ordered the County to pay for all past and continuing treatment provided to him.

The County appealed to the full commission, which again affirmed, adopting the findings and conclusions of the single

commissioner. The circuit court also affirmed. This appeal followed.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act governs judicial review of a decision of an administrative agency. S.C.Code Ann. §§ 1–23–310 to 400 (Supp.2004). Section 1–23–380(A)(6) establishes the substantial evidence rule as the standard of review. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134, 276 S.E.2d 304, 306 (1981). Under this standard, a reviewing court may reverse or modify an agency decision based on errors of law, but may only reverse or modify an agency's findings of fact if they are clearly erroneous. S.C.Code Ann. § 1–23–380(A)(6)(d) and (e).

Accordingly, a reviewing court may not substitute its judgment for that of the full commission as to the weight of the evidence on questions of fact. *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 337, 478 S.E.2d 74, 76 (Ct.App.1996). Instead, review of issues of fact is limited to determining whether the findings are supported by substantial evidence in the record. *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 289, 599 S.E.2d 604, 610–11 (Ct.App.2004). "On appeal, this court must affirm an award of the Workers' Compensation Commission in which the circuit court concurred if substantial evidence supports the findings." *Solomon v. W.B. Easton, Inc.*, 307 S.C. 518, 520, 415 S.E.2d 841, 843 (Ct.App.1992). "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached to justify its action." *Howell v. Pacific Columbia Mills*, 291 S.C. 469, 471, 354 S.E.2d 384, 385 (1987).

## LAW/ANALYSIS

### I. Change of Condition

The County's first contention on appeal is that Clark failed to prove a change of condition entitling him to additional compensation. Specifically, the County argues that because the change of condition asserted by Clark occurred before the full commission issued its order in the initial proceeding, the

change could not have occurred subsequent to the first award. We disagree.

Initially, Clark argues that the County failed to preserve this argument for appeal. In its request for review by the full commission, the County stated as grounds for appeal, in relevant part, that the single commissioner erred in finding as a fact and concluding as a matter of law that Clark sustained a change of condition for the worse. Clark argues that this assignment of error is not specific enough to preserve the argument for appeal.

An issue not raised in the application for review is not preserved for the full commission's consideration. *Creech v. Ducane Co.*, 320 S.C. 559, 564, 467 S.E.2d 114, 117 (Ct.App. 1995). General exceptions that fail to specifically assign the grounds for error are insufficient to preserve an issue. *Bogart v. First Citizens Bank & Trust Co.*, 273 S.C. 179, 180, 255 S.E.2d 449, 450 (1979). However, rules of appellate procedure should not be interpreted to create a trap for the unwary. *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 25, 602 S.E.2d 772, 780 (2004). Although we find preservation tenuous at best, we nevertheless proceed to the merits.

The Workers' Compensation Act provides a mechanism for reopening an award if there has been a change in condition. *Creech*, 320 S.C. at 564, 467 S.E.2d at 117; S.C.Code Ann. § 42-17-90 (1985). The purpose of this section is to enable the full commission to change the amount of compensation, including increasing compensation when circumstances indicate a change of condition for the worse. *Cromer v. Newberry Cotton Mills*, 201 S.C. 349, 354-55, 23 S.E.2d 19, 21 (1942). Accordingly, the full commission has continuing jurisdiction over its awards for the period set forth in section 42-17-90. *Id.*

Under section 42-17-90, a change of condition must occur after the first award for a claimant to be eligible for a review of that award. *Cromer*, 201 S.C. at 357, 23 S.E.2d at 21. "The issue before the Commission is sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based." *Gattis v. Murrells Inlet VFW # £10420*, 353 S.C. 100, 109, 576 S.E.2d 191, 196 (Ct.App.2003) (quoting *Krell v. S.C. State Hwy. Dep't*, 237 S.C.

584, 118 S.E.2d 322 (1961)); 5 Arthur Larson, *Larson's Workers' Compensation Law* § 131.03 (2004).

The County's argument appears to resemble a species of claim preclusion, though the County does not refer to it as such. Basically, the County argues that because an award by a single commissioner is not a final adjudication unless neither party appeals to the full commission, the change of condition must occur after review of the initial award by the full commission is completed. *See Riddle v. Fairforest Finishing Co.*, 198 S.C. 419, 424, 18 S.E.2d 341, 343 (1942) (holding that because the single commissioner's award is not a final adjudication, a party may not appeal directly to the circuit court). In other words, under principles of *res judicata*, Clark is precluded from asserting a change of condition following the full commission's order because he could have asserted it before the full commission in the original claim.

■■■■■ The doctrine of *res judicata* ordinarily acts to preclude relitigation of issues or claims actually litigated or which might have been litigated in the first action. *Estridge v. Joslyn Clark Controls, Inc.*, 325 S.C. 532, 540, 482 S.E.2d 577, 581 (Ct.App.1997). Nevertheless, a final judgment or award is not *res judicata* of issues neither asserted nor required to be asserted *"or which could not properly be asserted."* 101 C.J.S. *Workers' Compensation* § 1499 (2000) (emphasis added).

Our supreme court, citing Restatement (Second) of Judgments, section 20(2) (1982), has held that *res judicata* is not always an ironclad bar to a later claim:

A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or after the precondition has been satisfied, unless a second action is precluded by operation of the substantive law.

Likewise, this court stated in *Estridge* that a symptom which is "present and causally connected, but found not to impact upon the claimant's condition at the time of the original award, may later manifest in full bloom and thereby worsen his or her condition. Such an occurrence is within the reasons for the

code section involving a change of condition." 325 S.C. at 540, 482 S.E.2d at 581.

Dr. Greenberg made the determination that Clark needed back surgery to ease his back pain and performed the surgery prior to the full commission's order in the initial proceeding. Clark had no way of knowing if the surgery would improve his condition, and, therefore, the degree of change in condition was not yet ripe for review by the full commission. Further-more, inasmuch as the surgery's aim was to lessen Clark's degree of disability, the County was not prejudiced by having to wait for the natural and expected improvement of his physical condition following surgery.

In *Gattis,* a claimant sought to introduce evidence not included in the record before the single commissioner. 353 S.C. at 105, 576 S.E.2d at 193. The full commission refused to admit the evidence, holding that it would be appropriate for a change of condition proceeding instead. *Id.* The claimant subsequently requested review of the initial award based on change of condition, and the full commission found a change of condition based on the evidence sought to be introduced in the initial proceeding before it. *Id.* at 106, 576 S.E.2d at 194. The circuit court and this court on appeal affirmed the full commis-sion's decision. This court held that because the full commis-sion limited its initial order to a determination of the claim-ant's condition prior to the advent of the evidence in question, the evidence was appropriate for the change of condition proceeding. *Id.* at 109, 576 S.E.2d at 195–96.

Furthermore, it is undisputed that the full commission did not address any change of Clark's condition at the time of its decision. The fact that Clark requested in his brief to the full commission that Dr. Greenberg be designated as treating physician, does not lead to the conclusion that the request was actually considered and denied. The full commission's order made no ruling on the issue and merely adopted the findings and conclusions of the single commissioner. Because the onset of Clark's change of condition began before the full commission made its decision, the County argues that Clark could have moved to admit newly discovered evidence under 25A S.C.Code Ann. Regs. 67–707 (Supp.2004). However, be-cause Clark did not know the degree, if any, the surgery

would relieve his disability, we conclude his claim should not be barred under the unique facts of this case.

■ "The determination of whether a claimant experiences a change of condition is a question for the fact finder." *Gattis*, 353 S.C. at 107, 576 S.E.2d at 194. We must therefore affirm if substantial evidence supports the full commission's finding. *See Solomon v. W.B. Easton, Inc.*, 307 S.C. 518, 520, 415 S.E.2d 841, 843 (Ct.App.1992).

Upon his examination of Clark in July 2001, Dr. Greenberg testified that based on MRI results there had been a worsening of his condition since Dr. Epstein saw him in March of 2000. The MRI showed severe progressive narrowing of the spine, a marked worsening of Clark's previous condition, leading Dr. Greenberg to recommend urgent surgery. Likewise, Dr. Gero Kragh testified that a comparison of Clark's MRIs indicated a change of condition after June of 2000. He opined that the surgery was medically necessary in an effort to lessen Clark's disability. Additionally, Clark testified to increased pain in his legs and back after February 2001 and the lessening of that pain after the surgery. He testified also that some of the pain returned several months after the surgery, but not to the extent it persisted before the surgery. Therefore, substantial evidence exists in the record to support the finding that Clark sustained a change of condition subsequent to the prior award.

## II. Designation of Dr. Greenberg as Authorized Treating Physician

■ The County next argues that because Dr. Greenberg was not Clark's designated medical provider at the time he recommended and performed the surgery, the full commission erred in ordering it to pay for the treatment. We disagree.

After Clark's back injury, the County referred him to Dr. Gary T. Fishbach, who referred him to Dr. Franklin M. Epstein. Dr. Epstein opined that Clark was not a suitable candidate for surgery because he was obese and smoked.[1] Dr.

---

1. In the original proceeding, the single commissioner noted the wide discrepancy between the conclusions of the experts and ordered an independent evaluation. The parties sparred over which physician would perform the evaluation, and it was finally performed by Dr.

Epstein therefore referred Clark to Dr. John Downey for pain management in the fall of 2000.

Clark's pain continued, however, and he sought a second opinion. Clark spoke to his wife, who had worked with Dr. Greenberg. Dr. Downey referred Clark to Dr. Greenberg for an evaluation for surgery, noting that the referral was made at Clark's attorney's request. Dr. Greenberg testified that Clark's wife made the referral along with Dr. Downey. Clark testified he asked Dr. Downey for the referral because of the persistent pain.

During that period a conflict arose among the physicians. Drs. Epstein, Downey, and Greenberg were originally in practice together at the Southern Neurologic Institute. The practice split apart in the fall of 2001. Dr. Greenberg left Dr. Epstein and joined Dr. Downey in October of 2001. The breakup resulted in ill will between Dr. Epstein and Dr. Greenberg. In Dr. Greenberg's affidavit, he testified Clark advised him the treatment he had received from Dr. Epstein was unsatisfactory, and Dr. Epstein refused to provide Dr. Greenberg with Clark's records.

After Dr. Greenberg performed the surgery and Clark filed a claim for change of condition, the County demanded another evaluation by Dr. Epstein. When Clark refused to attend the appointment, the County filed a motion to compel his participation. Clark moved to disqualify Dr. Epstein, alleging that Dr. Epstein's former relationship and contacts with Dr. Greenberg prevented him from performing a fair and impartial medical examination. Dr. Greenberg also provided an affidavit stating that Dr. Epstein had refused to provide him with records.

After a hearing, the single commissioner granted the County's motion to compel and denied Clark's motion to disqualify. The single commissioner found no evidence of bias or prejudice on Dr. Epstein's part.

Clark attended the scheduled evaluation with Dr. Epstein in August 2002. Clark's wife and a friend, both nurses, accompanied Clark during the evaluation. They observed that Dr.

---

James F. Bethea. The original order considered Dr. Bethea's opinion, as well as that of Dr. Epstein and Dr. James K. Aymond.

Epstein failed to perform a complete examination. Dr. Epstein reported the surgery performed by Dr. Greenberg was not medically necessary.

In response to Dr. Epstein's report, Dr. Gero S. Kragh, a medical consultant, also evaluated Clark. Dr. Kragh confirmed the medical necessity of the surgery, although he said that a pharmacological approach should have been tried first. Dr. Kragh called Dr. Epstein's report into question and agreed that Clark had suffered a change of condition.

The single commissioner found the demeanor and testimony of Clark, his wife, and her friend credible and consistent. The single commissioner also drew inferences consistent with the opinions of Dr. Greenberg and Dr. Kragh and considered the conflict with Dr. Epstein and its origin.

The Worker's Compensation Act provides that the employer retains the right to name the authorized treating physician once a case has been accepted. S.C.Code Ann. § 42–15–60 (1985). Refusal by the claimant to accept treatment generally bars further compensation. *Id.* However, the full commission, when it deems it necessary, may override the employer's choice of providers and order a change in the medical or hospital service provided. *Gattis v. Murrells Inlet VFW # £10420,* 353 S.C. 100, 114, 576 S.E.2d 191, 198 (Ct.App. 2003). The full commission is further empowered to order payment of medical bills in such cases. *Id.* at 111, 576 S.E.2d at 196–97.

Generally, a claimant may obtain compensation only by accepting services from the employer's choice of providers. However, a claimant is not required to sacrifice much-needed treatment merely to comply with an employer's choice of physicians. *See Risinger v. Knight Textiles,* 353 S.C. 69, 73, 577 S.E.2d 222, 224–25 (2002) (holding that "the language of S.C.Code Ann. § 42–15–60 does not allow an employer to dictate the medical treatment of injured employees."). The full commission is empowered to order further medical care when controversies arise between a claimant and the employer. S.C.Code Ann. § 42–15–60.

In *Ford v. Allied Chemical Corp.,* 252 S.C. 561, 564, 167 S.E.2d 564, 565 (1969), a claimant who had seriously injured

his neck was put under the care of the company doctor. The company doctor referred the claimant to an orthopedic surgeon who was not impressed with the claimant's symptoms and discharged him. The claimant's symptoms continued to worsen, and he contacted a family physician who examined the claimant and concluded he was disabled. *Id.* at 565, 167 S.E.2d at 566. The supreme court upheld the full commission's finding that because the claimant had related his condition to the orthopedic surgeon, and received no assistance, the claimant was justified in refusing further care from that physician and in seeking treatment elsewhere. *Id.* at 567, 167 S.E.2d at 567.

In this case, Dr. Epstein indicated Clark was not a suitable candidate for treatment and referred him for pain management.[2] That treatment was unsuccessful, however. Because Clark related the continuing symptoms to the treating physicians and was unable to obtain relief, he was justified in seeking treatment elsewhere. Although the more appropriate procedure would have been for Clark to seek an order from the full commission before engaging Dr. Greenberg for treatment and surgery, we find that under *Ford* the full commission was not outside its discretion in ordering the County to pay for the surgery and continuing treatment, once it determined the treatment was medically necessary. *See Gattis,* 353 S.C. at 111, 576 S.E.2d at 197 (holding that the Workers' Compensation Act is to be liberally construed and reasonable doubts as to construction are to be resolved in favor of coverage).

We find no merit to the County's argument that the full commission allowed Clark to "shop around" indefinitely until he found a favorable opinion. In *Risinger,* the court held this state's workers' compensation statute does not allow an employer to "doctor shop" for a favorable opinion while sacrificing much-needed treatment for the claimant. 353 S.C. at 73, 577 S.E.2d at 224. The evidence in the record indicates Clark sought treatment from Greenberg solely for the purpose of obtaining relief from his pain. Furthermore, both Dr. Green-

---

2. In fact, Dr. Epstein indicated surgery would be a viable course of action if Clark lost weight and stopped smoking. Clark testified he lost some weight and stopped smoking prior to the surgery.

berg and Dr. Kragh testified that Clark's condition had worsened after the closing of evidence in the original proceeding. The pain management treatment was insufficient to meet Clark's needs. Finally, evidence of bias on the part of Dr. Epstein lends support to the full commission's finding that Clark was in need of alternative treatment. We therefore affirm the full commission's order in this regard.

### III. Total and Permanent Disability

The County's final argument is that the full commission erred in determining Clark was totally and permanently disabled. We disagree.

The full commission found that Clark sustained an impairment of greater than 51% to his back and concluded he was totally and permanently disabled. To qualify for total and permanent disability, a claimant must suffer a 50% or greater loss of use of his back. S.C.Code Ann. § 42–9–30(19) (Supp. 2004). The full commission's finding as to the degree of impairment is a question of fact. *Lyles v. Quantum Chemical Co. (Emery)*, 315 S.C. 440, 445, 434 S.E.2d 292, 294–295 (Ct.App.1993). Accordingly, we must affirm if the full commission's findings are supported by substantial evidence. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 136, 276 S.E.2d 304, 307 (1981).

In the original proceeding, the full commission rated Clark's impairment at 30%. Thus, the question in this change of condition proceeding is whether evidence indicates that since that time, Clark's impairment has increased to 50%.

Dr. Greenberg testified that Clark is permanently vocationally disabled. He testified that Clark's back pain is caused by severe degenerative arthritis with spinal stenosis, which has become incapacitating. Clark will need lifelong medication and follow-up treatment. Dr. Kragh rated Clark's impairment in the range of 30% whole body, 40% spinal based on cauda equine syndrome, lateral recess syndrome, S–1 radiculopathy, and possibly myelopathy.

Clark's wife testified that she has been the sole financial provider for the family since July of 1999. Clark's physical activity level has grown progressively worse since that time. He sleeps only a few hours at a time. He also requires

assistance in dressing and using the lavatory. She testified that after the surgery Clark was pain-free for four to six months, but his condition has since deteriorated.

Clark testified his condition is somewhat better now than it was before the surgery. However, he still has pain. He can no longer enjoy hunting, camping, and fishing, his former hobbies. The County has retired him on disability, and he has not worked since March of 2000. Accordingly, we find substantial evidence in the record to support a finding of total and permanent disability.

## CONCLUSION

We hold that the full commission correctly concluded that Clark has sustained a change of condition occurring after the prior award, which has rendered him totally and permanently disabled. We further find no error in the full commission ordering the County to pay for the surgery and continuing treatment by Dr. Greenberg. Accordingly, the order of the full commission is hereby

**AFFIRMED.**

HEARN, C.J., and BEATTY, J., concur.