**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Michael K. Crowley, Employee, Appellant,

v.

Darlington County, Employer, and South Carolina Association of Counties SIF, Carrier, Respondents.

Appellate Case No. 2022-000282

---

Appeal From The Workers' Compensation Commission

---

Unpublished Opinion No. 2024-UP-225
Heard May 8, 2024 – Filed June 26, 2024

---

**AFFIRMED**

---

Preston F. McDaniel, of McDaniel Law Firm, of Columbia, and Gerald Malloy, of Malloy Law Firm, of Hartsville, both for Appellant.

Johnnie W. Baxley, III, of Willson Jones Carter & Baxley, P.A., of North Charleston, for Respondents.

---

**PER CURIAM:** In this workers' compensation action against Darlington County, Employer, and South Carolina Association of Counties, Carrier, (collectively, Respondents) Michael K. Crowley appeals the order of the South Carolina

Workers' Compensation Commission (the Commission), arguing it erred in (1) failing to award total and permanent disability benefits based on loss of use of his back, (2) failing to award total and permanent disability benefits based on loss of earning capacity, (3) admitting a medical opinion and evaluation report, and (4) making certain findings of fact. We affirm.

**FACTS**

The parties stipulated that Deputy Crowley, an employee of Darlington County Sheriff's Office (DCSO), sustained two compensable injuries, the first on May 5, 2017, and the second on January 3, 2018. The first injury, to Crowley's knee, occurred while he was attempting to restrain a combative juvenile. In October 2017, Crowley reached maximum medical improvement (MMI) and was assigned a 5% impairment rating to the lower right extremity with no future medical treatment. In the second injury, Crowley was assisting in the removal of a vehicle from an icy road when he sustained another injury to his right knee and a new injury to his lumbar spine.[1] Crowley began working at the courthouse in a sedentary position until he resigned in January 2021.

Crowley was evaluated and treated by numerous physicians. On December 15, 2017, after the first injury, Dr. Nigel Watt found Crowley at MMI and assigned a 5% impairment to the lower right extremity with no permanent limitations. In October 2019, Crowley was seen by a physical therapist, who performed a functional capacity evaluation and found he had the ability to perform within the sedentary physical demand capacity. In December 2019 and February 2020, Dr. Naso released Crowley at MMI, assigning 8% whole person impairment or 10.7% lumbar spine impairment, finding he could return to work in his post-injury accommodated position as a security guard for the court.

In December of 2019, Respondents filed a Form 21, alleging Crowley was at MMI with ratings of 8% to his back and 5% to his right leg. Dr. Leonard Forrest evaluated Crowley on January 29, 2020, and he assigned a 13% whole person impairment rating to the back or a 17% regional impairment rating. In October 2020, Dr. Richard Friedman, not a treating physician, reviewed Crowley's medical history, found he was at MMI, and assigned a 0% impairment rating.

---

[1] Crowley had pre-existing injuries, including "right shoulder and back pain following an unrelated [automobile accident] in 2007" and cervical spine surgery in 2015, resulting from an automobile accident in 2013.

Crowley was also seen by vocational evaluators. In February 2020, Harriett Fowler reported Crowley was unable to continue working as a deputy sheriff and it was "more likely than not that [he] would be unable to obtain and maintain substantial gainful employment." Crowley was also evaluated at Corvel, and in a vocational assessment dated April 10, 2020, it found Crowley could continue working in his accommodated position as a security officer for the court.

On January 4, 2021, Respondents refiled a Form 21, which included a report from Dr. James F. Bethea dated December 17, 2020. Crowley requested a pre-hearing conference to exclude Dr. Bethea's report or to safeguard his right to cross-examine Dr. Bethea by deposition at Respondents' expense. The parties submitted prehearing briefs. Respondents alleged Claimant requested a second opinion on his back, which was performed by Dr. Bethea on December 17, 2020. Dr. Bethea assigned a 3% impairment with no work restrictions. Crowley scheduled Dr. Bethea's deposition for January 27, 2021, but canceled it when Respondents would not pay Dr. Bethea for his time during the deposition.

At the March 4, 2021 hearing before the single commissioner, Crowley argued Dr. Bethea's report was obtained in violation of Section 42-15-95 of the South Carolina Code (2015), alleging it required Respondents to notify him of their communications with a physician, which was not done. Crowley argued "any discussions, communications, medical reports or opinions obtained in violation of [section 42-15-95(c)] must be excluded." Crowley next argued he attempted to depose Dr. Bethea. According to Crowley, Respondents had already paid Dr. Bethea $5,000 for his evaluation, and Dr. Bethea notified Crowley that he would not go forward with the deposition unless Crowley paid him $400 per hour. Crowley maintained Respondents were responsible for the payment. Respondents disagreed. The commissioner admitted the evaluation. Crowley also objected to the admission of all medical records prior to the first admitted injury, arguing that none of his pre-existing conditions were related to his current problem with his low back and leg. The commissioner admitted the records. Respondents next argued Crowley was entitled only to permanent partial disability either as a scheduled disability or based on the loss of earning capacity because he was able to earn $618.05 per week as wages per the Corvel evaluation. Respondents relied in part on the records of Dr. Leonard Forrest of Southeastern Spine and the treating neurosurgeon, Dr. Naso, which indicated Crowley could continue to work as security in the courtroom. Crowley argued he was entitled to total and permanent disability based on the loss of the use of greater than 50% of his back, and based on his age, education, background, experience, and physical facts of his injury, the jobs he was capable of performing were so limited in nature that a reasonably

stable job market did not exist for them. Crowley relied on Dr. Forrest's evaluation, which concluded Crowley had lost greater than 50% use of his back and, according to Crowley, it was the only evidence in the record concerning loss of use. Crowley further maintained he was unable to meet the full demands of sedentary work and he requested continuing treatment, including pain management. Crowley noted Dr. Cheatle recommended chronic pain management and Dr. Nigel Watt was "established [as his] pain management physician."

Crowley described the 2017 admitted injury, explaining his knee and back twisted, he was treated at the emergency room at Carolina Pines, and he was subsequently treated at Hartsville Primary Care by Dr. Watt, as referred to by the DCSO. After Crowley was released from his knee injury, he had another admitted accident on January 3, 2018, during which he injured his lower back and right leg while helping to remove a car from snow on the road. Crowley was again treated by Dr. Watt and, after he filed for a hearing, by Dr. Cheatle in Myrtle Beach. Dr. Cheatle recommended an MRI and a stimulator, then sent Crowley to Dr. Sarb in Florence. Crowley received two spinal cord stimulator treatments, one injection, and physical therapy. Dr. Naso and Dr. Sarb indicated light duty and restricted Crowley from stooping, bending, long-time standing, and jumping.

Crowley testified he thereafter began working at the courthouse. In February of 2020, Dr. Naso opined Crowley could continue to work in his capacity on light duty at the courthouse. Crowley testified the position in the courthouse was difficult, and in November 2020, he applied for disability through the South Carolina Retirement System. He retired in January 2021, testifying he had continuing pain in his lower back and hamstring. He explained he last had an MRI in 2019, and when he saw Respondents' doctor, Dr. Bethea, the doctor spent only ten to fifteen minutes with him, watching him bend and walk. Crowley estimated his loss of use of his back was 80%.

During cross-examination, defense counsel questioned Crowley about his pain management from as early as 2002; an MRI in 2008 that indicated an L-5 S-1 herniated disc; chronic right groin pain secondary to nerve damage in June 2010; low back pain in 2010; low back, left knee, and right shoulder pain management after the 2013 motor vehicle accident; disc surgery in December 2015 on his neck; opioid dependence treatment in 2016; the May 2017 injury; the January 2018 injury; an MRI on his leg indicating no change; and another MRI on his back, also indicating no change. An October 2018 MRI showed degenerative disc disease. Crowley admitted Dr. Naso released him at MMI with an 8% impairment rating and Dr. Forrest released him at MMI with a 13% impairment rating to his back.

Both doctors told Crowley he could continue light duty at the courthouse. Crowley testified he retired in part because the DCSO reduced his pay, no longer provided a vehicle, and required him to report to the detention center rather than DCSO.

The single commissioner assigned no weight to Dr. Friedman's report because it was based solely on a review of the medical records. The commissioner concluded Crowley reached MMI on November 21, 2019, and under Section 42-9-30 of the South Carolina Code, the commissioner assigned a 10% permanent partial impairment rating to the right leg and a 25% permanent partial impairment rating to the back. The commissioner also found Crowley was entitled to additional medical treatment to maintain his level of disability at MMI. Finally, the commissioner found Dr. Bethea was entitled to charge a fee for a deposition and no due process rights of Crowley were violated. The commissioner denied Crowley's motion for reconsideration.

Crowley requested review by the Commission and the parties filed briefs. After a hearing, the Commission affirmed the single commissioner. This appeal followed.

## STANDARD OF REVIEW

We review an appeal from the Commission under the substantial evidence standard of review. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 133, 276 S.E.2d 304, 305 (1981). "Under the substantial evidence standard of review, this court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law." *Murphy v. Owens Corning*, 393 S.C. 77, 81-82, 710 S.E.2d 454, 456 (Ct. App. 2011). In discussing substantial evidence, our supreme court has stated:

> "Substantial evidence" is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action.

*Lark*, 276 S.C. at 135, 276 S.E.2d at 306 (quoting *Laws v. Richland Cnty. Sch. Dist. No. 1*, 270 S.C. 492, 495-96, 243 S.E.2d 192, 193 (1978)).

## LAW/ANALYSIS

## A. Total and Permanent Disability Based on Loss of Use of the Back

Crowley argues the Commission erred by not awarding him total and permanent disability for loss of use of his back.  We disagree.

South Carolina workers' compensation law provides an injured employee three means of obtaining compensation: (1) total disability under section 42-9-10 of the South Carolina Code (2015); (2) partial disability under section 42-9-20; and (3) scheduled disability under section 42-9-30.  *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 105, 580 S.E.2d 100, 102 (2003).  "The first two methods are premised on the economic model, in most instances, while the third method conclusively relies upon the medical model with its presumption of lost earning capacity."  *Id.*  "[T]he economic model . . . defines disability and incapacity in terms of the claimant's loss of earning capacity as a result of the injury. . . .  [T]he medical model . . . provides awards for disability based upon degrees of medical impairment to specified body parts."  *Id.* at 104, 580 S.E.2d at 102.  "Under the medical model[,] loss of earning capacity is not irrelevant.  Instead, the Legislature has statutorily presumed lost earning capacity for certain scheduled injuries even where the employee is still capable of working."  *Id.* at 104 n.2, 580 S.E.2d at 102 n.2.

Regarding a claimant's back, the scheduled member statute provides:

> In cases included in the following [scheduled member] schedule, the disability in each case is considered to continue for the period specified and the compensation paid for the injury is as specified:

>> (21) *for the loss of use of the back in cases where the loss of use is forty-nine percent or less*, sixty-six and two-thirds percent of the average weekly wages during three hundred weeks.  *In cases where there is fifty percent or more loss of use of the back*, sixty-six and two-thirds percent [of] the average weekly wages during five hundred weeks.  The compensation for partial loss of use of the back shall be such proportions of the periods of payment herein provided for total loss as such partial loss bears to total loss, except

that in cases where there is fifty percent or
more loss of use of the back the injured
employee shall be presumed to have
suffered total and permanent disability and
compensated under Section 42-9-10(B). The
presumption set forth in this item is
rebuttable . . . .

S.C. Code Ann. § 42-9-30(21) (2015) (emphasis added).

Crowley argues "loss of use" is the essential issue for decision under the scheduled
member section, and the Commission erred in looking at loss of earnings rather
than loss of use. In addition, Crowley argues the loss of use is to the activities of
daily living rather than to loss of earning capacity. Crowley relies in part on
*Clemmons v. Lowe's Home Centers, Inc.*, 420 S.C. 282, 803 S.E.2d 268 (2017).

In *Clemmons*, our supreme court reversed this court's affirmance of the
Commission's order that found the claimant's back was impaired less than fifty
percent. 420 S.C. at 288-89, 803 S.E.2d at 271. The court found the following:

We find the Commission's conclusion with respect to loss
of use is unsupported by the substantial evidence in the
record. Specifically, there is *no* evidence in the record
that Clemmons suffered anything less than a fifty percent
impairment to his back. Every doctor and medical
professional who assigned an *AMA Guides* impairment
rating indicated Clemmons lost more than seventy
percent of the use of his back . . . .

While there is medical evidence that Clemmons' whole
person was impaired less than fifty percent, the issue
under the scheduled-member statute is not impairment as
to the whole body, but rather it is the loss of use of a
specific body part—in this case, Clemmons' back. *See
Therrell v. Jerry's Inc.*, 370 S.C. 22, 28, 31, 633 S.E.2d
893, 896, 898 (2006) ("emphasiz[ing] the need for the
commission to examine the particular injury at issue in
every case to determine how a physician's . . .
impairment rating is properly applied" and indicating it is
appropriate to consider the regional impairment for

injuries to scheduled members, while injuries to unscheduled members should be couched in terms of whole-person impairment). Indeed, South Carolina courts have repeatedly considered regional impairment ratings when determining awards under section 42-9-30(21). *See*, *e.g.*, *Burnette v. City of Greenville*, 401 S.C. 417, 420-21, 423, 737 S.E.2d 200, 202-03 (Ct. App. 2012) (Burnette's first injury caused an impairment to her back of thirteen percent, based on an eight percent lumbar impairment and a five percent cervical impairment; and after her second injury she was assigned a seventy-two percent impairment to her cervical spine and a sixteen percent lumbar impairment, which translated to whole-person ratings of twenty-five percent and twelve percent, respectively.); *Lawson v. Hanson Brick Am., Inc.*, 393 S.C. 87, 89, 710 S.E.2d 711, 712 (Ct. App. 2011) (noting claimant had been assigned a twenty-five percent whole-person rating which translates to a thirty-three percent lumbar impairment). All the medical evidence in the record points to only one conclusion: Clemmons has suffered an impairment to his back greater than fifty percent. Therefore, we hold Clemmons has lost more than fifty percent of the use of his back and is presumptively permanently and totally disabled under section 42-9-30(21).

*Id.*

"To qualify for total and permanent disability, a claimant must suffer a 50% or greater loss of use of his back." *Clark v. Aiken Cnty. Gov't*, 366 S.C. 102, 115, 620 S.E.2d 99, 105 (Ct. App. 2005). "The full commission's finding as to the degree of impairment is a question of fact." *Id.* "[W]e must affirm if the full commission's findings are supported by substantial evidence." *Id.* at 115, 620 S.E.2d at 105-06.

Crowley argues substantial evidence does not support the award of less than total and permanent disability and the Commission erred in not making more detailed findings of fact on the essential issue of loss of use. We find there is ample evidence to support the Commission's finding of less than 50% loss of use of the back; thus, the Commission did not err in declining to award total disability for more than 50% loss of use under section 42-9-30(21).

Dr. Naso released Crowley at MMI, assigning 8% whole person impairment or 10.7% lumbar spine impairment, finding he could return to work in his post-injury accommodated position as a security guard for the court. Dr. Forrest evaluated Crowley on January 29, 2020, and assigned a 13% whole person rating to the back or a 17% regional impairment. We find substantial evidence to support the Commission's finding of a 25% permanent partial impairment rating to the back. Unlike in *Clemmons*, there is substantial evidence to support the Commission's finding that the loss of use of a specific body part—in this case, Crowley's back—was less than 50%; thus, the award of permanent partial disability, rather than total disability, was not erroneous.[2]

### B. Loss of Earning Capacity

Crowley argues the Commission erred by failing to award him total and permanent disability under section 42-9-10 for loss of earning capacity. We disagree.

A workers' compensation claimant is entitled to total and permanent disability benefits "[w]hen the incapacity for work resulting from an injury is total . . . ." S.C. Code Ann. § 42-9-10(A) (2015). "[A] claimant may establish total disability under § 42-9-10 by showing an injury, *which is not a § 42-9-30 scheduled injury*, caused sufficient loss of earning capacity to render him totally disabled." *Wigfall*, 354 S.C. at 105, 580 S.E.2d at 102 (emphasis added). As discussed above, we find

---

[2] As to Crowley's argument that the Commission erred in looking at loss of earnings rather than loss of use, we find no merit. Although the Commission noted loss of earnings and potential earnings in its findings of fact, it also based its findings on the medical providers' opinions, including considering the impairment ratings to Crowley's spine of "8% (10.7% regional) from Dr. Naso; 13% (17% regional) from Dr. Forrest; and 3% from Dr. Bethea." We find substantial evidence in the record to support the Commission's findings regarding the extent of Crowley's back injury. *See Sanders v. MeadWestvaco Corp.*, 371 S.C. 284, 291, 638 S.E.2d 66, 70 (Ct. App. 2006) ("While an impairment rating may not rest on 'surmise, speculation or conjecture . . . it is not necessary that the percentage of disability or loss of use be shown with mathematical exactness.'" (omission in original) (quoting *Roper v. Kimbrell's of Greenville*, 231 S.C. 453, 461, 99 S.E.2d 52, 57 (1957))); *Mungo v. Rental Unif. Serv. of Florence, Inc.*, 383 S.C. 270, 279, 678 S.E.2d 825, 829-30 (Ct. App. 2009) (stating the Commission "is the ultimate fact finder in workers' compensation cases, and if its findings are supported by substantial evidence, it is not within our province to reverse those findings.").

substantial evidence supports the Commission's award of partial disability as a scheduled injury under section 42-9-30.

## C.     Admissibility of Evidence

Crowley argues the Commission erred in admitting the medical opinion and evaluation report of Dr. James Bethea because Respondents failed to comply with the mandatory provisions of Section 42-15-95 of the South Carolina Code.   We disagree.

Section 42-15-95 provides the following:

> (B) *A health care provider who provides examination or treatment* for any injury, disease, or condition for which compensation is sought . . . may discuss or communicate an employee's medical history, diagnosis, causation, course of treatment, prognosis, work restrictions, and impairments with the insurance carrier, employer, their respective attorneys or certified rehabilitation professionals, or the commission  without the employee's consent.  The employee must be:
>
> > (1) notified by the employer, carrier, or its representative requesting the discussion or communication with the health care provider in a timely fashion, in writing or orally, of the discussion or communication and may attend and participate.  This notification must occur prior to the actual discussion or communication if the health care provider knows the discussion or communication will occur in the near future;
> > (2) advised by the employer, carrier, or its representative requesting the discussion or communication with the health care provider of the nature of the discussion or communication prior to the discussion or communication; and
> > (3) provided with a copy of the written questions at the same time the questions are

> submitted to the health care provider.  The
> employee also must be provided with a copy
> of the response by the health care provider.

S.C. Code Ann. § 42-15-95(B) (2015) (emphasis added).  Section 42-15-95(C) provides that "[a]ny discussions, communications, medical reports, or opinions obtained in violation of this section must be excluded from any proceedings under the provisions of this title."  S.C. Code Ann. § 42-15-95(C) (2015).

Crowley references Respondents' letter to Dr. Bethea, dated October 27, 2020, requesting a second opinion evaluation and accompanied by Crowley's medical records.  The letter requested Dr. Bethea determine (1) if Crowley had reached MMI of his back; (2) an impairment rating if so; (3) future medical treatment or restrictions required; and (4) medical treatment necessary to reach MMI if not at MMI.  Crowley argued he was unaware of the letter prior to his subpoena to Dr. Bethea, issued January 6, 2021.  In response to Crowley's objections, Respondents asserted that under section 42-15-95, requirements regarding communications between attorneys and physicians apply only after the physician examines, treats, or otherwise establishes a relationship with the patient/claimant.  Dr. Bethea examined Crowley on December 17, 2020.

Our supreme court discussed section 42-15-95 in *Brown v. Bi-Lo, Inc.*, 354 S.C. 436, 439, 581 S.E.2d 836, 838 (2003), finding it "contemplates the disclosure of existing written records and documentary materials."  In *Brown*, the claimant objected to a rehabilitation nurse hired by the employer who was contacting the claimant's medical providers "regarding the nature of her condition and cause of her falls."  *Id.* at 438, 581 S.E.2d at 837.  The claimant's attorney wrote letters to the nurse and the providers advising them not to participate.  *Id.*  When the employer complained to the Commission, the Commission ordered the claimant's attorney to "cease and desist from obstructing contact. . . ."  *Id.*  Our supreme court disagreed, reversed this court's affirmance, and found the statute referred to the exchange of medical information from providers to employers, "indicat[ing] the General Assembly's clear intent to require health care providers and facilities to forward existing written records and documents."  *Id.* at 440, 581 S.E.2d at 838.  The court found the statute did not authorize other "methods of communication between an insurance carrier, employer, or their representatives and the claimant's health care provider . . . ."  The court also noted "we are bound to strictly construe the terms of the statute and to rely on the General Assembly to amend the statute where necessary."  *Id.* at 441, 581 S.E.2d at 838.

We find there was a violation of section 42-15-95 because the purpose of the statute is for providers to exchange information with employers rather than an employer to provide a claimant's medical records to a provider not known to the claimant, as occurred here. However, we also find that whether the Commission erred or not in admitting Dr. Bethea's subsequent evaluation, there was substantial evidence in the record without it to support the Commission's award; thus, any error in its admission was harmless. *See Rummage v. BGF Indus.*, 434 S.C. 441, 457, 865 S.E.2d 380, 389 (Ct. App. 2021) (applying a harmless error analysis to erroneous admission of evidence in a workers' compensation action).

## D. Findings of Fact

Crowley argues the Commission erred in numerous of its findings of fact. We disagree.

Crowley first argues the Commission erred in its findings of fact underlying the admissibility of his prior medical records. Crowley argues the prior medical records were not relevant to the current medical problems for which he sought compensation. Crowley relies in part on *Clark v. Philips Electronics/Shakespeare*, 433 S.C. 186, 857 S.E.2d 378 (Ct. App. 2021). In *Clark*, the claimant had an undisclosed prior injury. *Id.* at 193, 857 S.E.2d at 381. This court reversed the Commission, which essentially disregarded the medical evidence due to the claimant's omission. *Id.* We found the claimant's "lack of candor did not corrupt the credibility of his MRI results or the physical examinations of his treating physicians." *Id.*

Like the single commissioner and Commission in this case, we find no application of *Clark* because Crowley's credibility was not an issue here. Rather, the issues in this case were the weight to assign to medical records and whether Crowley's pre-existing conditions were related to his work injuries. Thus, we find no error in the factual findings underlying the admission of Crowley's prior medical records.

Crowley also objects to the Commission's findings regarding the violation of his due process rights to cross-examine witnesses because there was a fee involved in securing Dr. Bethea's deposition testimony. We find no error because Crowley had the opportunity to both cross-examine and subpoena Dr. Bethea. *See* S.C. Code Ann. § 1-23-330(3) (2005) (providing "[a]ny party may conduct cross-examination"); S.C. Code Reg. 67-611(B)(1) (Supp. 2023) ("The moving party must provide the Form 58 and proof of service to the opposing party at least fifteen days before a scheduled hearing. The Form 58 must . . . set forth the names and

addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements . . . have been taken from any witness . . . .").

We also find no error by the Commission in declining to require Respondents to pay Dr. Bethea's fees for a deposition. The South Carolina Regulations govern the payment for the provision of medical services, providing the following:

> A. The Commission shall establish maximum allowable payments for medical services provided by medical practitioners based on a relative value scale and a conversion factor set by the Commission.
>
> (1) The maximum allowable payments and any policies governing the billing and payment of services provided by medical practitioners shall be published in a medical services provider manual.
> (2) The Commission may review and update the relative values and/or the conversion factor as needed.

S.C. Code Ann. Regs. 67-1302 (2012). Respondents allege the Medical Services Provider Manual provides for reimbursement for medical testimony by deposition at $400 for the first hour and $100 for each additional quarter hour. We find no authority that requires Respondents to pay for a deposition taken by a claimant.

Finally, Crowley objects to the Commission's use of a legal argument in a finding of fact, arguing it is a "legal argument containing precedent not cited to the Commission[] by the parties and thus outside of the record." Crowley cites no law that prohibits the Commission from considering and/or applying caselaw not previously raised by the parties. We find no merit to this issue.

**CONCLUSION**

For the foregoing reasons, the order on appeal is

**AFFIRMED.**

**THOMAS, MCDONALD, and VERDIN, JJ., concur.**